Robert L. LOGGINS, Appellant,

v.

Gerard FREY, Appellee.

No. 85–1402.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1985.

Decided March 17, 1986.

Howard B. Eisenberg, Carbondale, Ill., for appellant.

George Cox, Asst. Atty. Gen., Jefferson City, Mo., for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.

LAY, Chief Judge.

Robert Loggins, a Missouri prisoner, was convicted of first degree assault and sentenced by a state circuit judge to a term of twenty years. The Missouri Court of Appeals affirmed his conviction. *See State v. Loggins,* 647 S.W.2d 551 (Mo.App.1982).

Loggins thereafter petitioned for a writ of habeas corpus in federal district court,[1] alleging that he had been denied due process of law by the state trial court's refusal to grant him a continuance, and that his right of confrontation had been infringed by the admission of certain prior testimony given by the victim of the assault. The district court found no constitutional error in the state trial court proceeding and denied the writ. We affirm.

Loggins was an inmate at a Missouri correctional facility (Renz Farm) on September 1, 1980 when the assault for which he was convicted occurred. At approximately 8 p.m. that evening, a fight involving several inmates broke out in the prison yard. Loggins was charged with assaulting inmate Anthony Thompson with a wooden mallet, a length of pipe and his fists. Loggins first came to trial for the offense on January 13 and 14, 1981. He was convicted and sentenced to ten years imprisonment. This conviction was set aside on the trial court's own motion because of improper statements made by the prosecution during closing argument.

A second trial was set for April 29, 1981, but Loggins, who had been released from confinement in the interim, failed to appear. His counsel entered an appearance and was denied a motion for continuance. After a capias warrant was issued, Loggins was arrested on June 4th or 5th, and a new trial date set for June 10th. The matter was continued, though, since Loggins' counsel did not appear although he had been notified of the trial date.

The trial was rescheduled for July 14, 1981, at which time Loggins appeared represented by another counsel. On the day of trial, Loggins' new counsel moved for a continuance on the ground that certain witnesses, including the victim, Anthony Thompson, who had testified at Loggins' first trial, were presently unavailable. The trial court denied Loggins' motion. Counsel for Loggins and the prosecution then stipulated that Thompson was unavailable and that his testimony given at Loggins' first trial could be read to the jury.

The Missouri Court of Appeals thoroughly summarized the testimony given at Loggins' second trial in its opinion rendered on Loggins' direct appeal. *See Loggins,* 647 S.W.2d at 552–55. We will only further summarize the facts directly relevant to this appeal. The state's case was constructed principally through the testimony of three correctional officers who were on duty the evening of the fight and observed the fracas from different vantage points. One officer stated that he saw Loggins strike Thompson on the head with a wooden mallet. A second blow broke the mallet, and the officer took the stick portion of the mallet away from Loggins and threw it over the fence. A second officer said he later saw Loggins strike Thompson two or three times over the head with a length of steel pipe before the pipe could be taken away from him. He later saw Loggins hit Thompson with the mallet. A third officer saw both incidents, and also observed Loggins punch Thompson with his fist.

The state then read Thompson's prior trial testimony to the jury, as counsel had stipulated. Thompson had recalled few details of the fight. He said he did remember a fight taking place, but when asked, "Between who?," he responded, "I am not sure who it was." When asked "Do you remember being struck on the head?," he replied, "No." Thompson had sustained serious head injuries in the fight, including multiple abrasions and bruises, a large scalp laceration, and a fractured skull.

The defense called nine Renz Farm inmates, each of whom had observed the fight. Six of these witnesses testified that they did not see Loggins strike Thompson; two stated that a different inmate struck Thompson; several also stated that they did not see anyone use weapons. One witness did, however, state that she observed a fist fight between Loggins and Thomp-

---

1. The Honorable William L. Hungate, United States District Court for the Eastern District of Missouri.

son. In addition, the prior testimony of two other inmates was read to the jury. One of these witnesses had testified that he never saw Loggins with a weapon; the other had stated that he never saw any weapons used, nor did he see Loggins strike Thompson. Loggins, testifying in his own defense, denied ever using a mallet or a pipe, but admitted that he could have struck Thompson with his fists. He stated that the three officers had given false testimony regarding his striking Thompson with the pipe or mallet.

After deliberation, the jury returned a verdict of guilty and the court sentenced Loggins to a term of twenty years imprisonment. Loggins appealed to the state court of appeals, which affirmed the convictions despite Loggins' contentions, *inter alia,* that the trial court erred in refusing to grant a continuance so that Loggins could secure Thompson as a witness. Loggins had premised the need for Thompson's live testimony on an alleged discovery of additional information showing that someone else had injured Thompson. Loggins asserted that the court's denial of his motion for a continuance deprived him of "crucial testimony thereby preventing him from presenting the best possible defense."

The state appellate court rejected this argument, holding that the trial court's denial of Loggins' motion did not prejudice him. The court reasoned that "[u]nless it is presumed that at the second trial, Thompson would have perjured himself by stating that someone else and not appellant struck him (and such presumption cannot and will not be entertained by this court), [Loggins] received the optimum of Thompson's testimony." *Loggins,* 647 S.W.2d at 558. Thus, the court concluded that the trial court did not abuse its discretion in denying his motion for continuance.

The Missouri appellate court also rejected any claim that the admission of Thompson's prior testimony deprived Loggins of his right of confrontation. Rather, the

court held that the stipulation to Thompson's unavailability entered into between counsel, permitting the admission of Thompson's prior testimony, constituted an effective waiver of Loggins' confrontation right.

Loggins challenged both of these conclusions in his petition for a writ of habeas corpus in district court. The district court concurred in the state court's analysis, however, holding first that the trial court's denial of Loggins' motion for a continuance did not violate his right of confrontation or due process.[2] The district court relied on the trial court's finding that Loggins was dilatory in securing his witnesses, that Loggins had received the "maximum benefit" of Thompson's testimony from reading Thompson's prior testimony to the jury, and that Loggins had failed to show how he had been prejudiced by the admission of the prior testimony. Further, Loggins' right of confrontation was found not to have been infringed since, in the district court's view, Loggins had knowingly and intelligently waived his confrontation right by his counsel's stipulation. For the following reasons, we affirm the judgment of the district court and deny Loggins' petition.

■ We first address Loggins' contention that he was denied due process of law by the trial court's refusal to grant a continuance to seek Thompson's live testimony. Loggins concedes that the propriety of a ruling on a motion for continuance is ordinarily within the discretion of the trial court. *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964); *see Morris v. Slappy,* 461 U.S. 1, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983); *Urquhart v. Lockhart,* 726 F.2d 1316, 1319 (8th Cir.1984). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay,'" *Morris,* 103 S.Ct. at 1616 (quoting *Ungar,* 376 U.S. at 589, 84 S.Ct. at 849), may give rise to a violation of due process.

2. The petition had been referred to the federal magistrate, the Honorable William S. Bahn, for a recommended disposition pursuant to 28 U.S.C. § 636(b). The magistrate's review and recommendation was incorporated into the district court's order.

Further, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." *Ungar,* 575 U.S. at 589, 84 S.Ct. at 850 (citing *Nilva v. United States,* 352 U.S. 385, 77 S.Ct. 431, 1 L.Ed.2d 415 (1957); *Torres v. United States,* 270 F.2d 252 (9th Cir. 1959)).

In this case, the trial court advanced the following reasons for denying Loggins' motion:

> The Court specifically finds the delays in bringing this cause to trial were occasioned by [Loggins'] failure to appear although notified of trial. * * * [B]ecause of the delay in the trial of this case and the further disappearance of more witnesses each time it is continued, the Court will find that the requested delay of this trial by continuance would not serve the interest of justice and due diligence was not exercised by the Defendant in securing witnesses, nor is it apparent what their testimony would be should there be cause to be an attempt to secure their presence.

Loggins does not dispute that his own conduct was the cause of some earlier delay in scheduling the trial. Nevertheless, he contends that the trial court erred in the weight given Loggins' conduct in ruling on the motion. In addition, Loggins argues that the trial court clearly erred in evaluating the importance of Thompson's live witness testimony.

■ The trial court did expressly find that Loggins' lack of due diligence weighed against granting Loggins' request. A trial court's finding on diligence should be afforded great weight on review. Trial courts must take into account myriad circumstances affecting the scheduling of trials, and "[n]ot the least of their problems is that of assembling the witnesses, lawyers and jurors at the same place at the same time, and this burden counsels against continuances except for compelling reasons."

*Morris,* 103 S.Ct. at 1616. In light of these principles, we cannot agree that the trial court abused its discretion in denying Loggins' motion after twice rescheduling the trial to accommodate him. Further, Loggins' unsupported assertion that new evidence had been discovered which allegedly would have altered the jury's assessment of Thompson's testimony fails to constitute a compelling reason mandating a grant of another continuance.

■ Loggins also argues that since the state failed to provide the defense with Thompson's address until the day before trial, the continuance should have been granted. Under the circumstances, that fact alone does not provide us a tenable basis from which to conclude that Loggins was denied due process of law. We find that the trial court committed no constitutional error in denying Loggins' motion for continuance.

■ Nor do we find merit in Loggins' assertion that he was denied his right to confront Thompson when Thompson's prior trial testimony was read to the jury. Loggins relies on the general rule that a threshold requirement for the admissibility of such hearsay testimony is a showing by the state that the declarant is unavailable to testify. *Ohio v. Roberts,* 448 U.S. 56, 65, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); *Morrow v. Wyrick,* 646 F.2d 1229, 1232 (8th Cir.1981); *see also Phillips v. Wyrick,* 558 F.2d 489, 493 (8th Cir.1977). He argues that since the state produced no evidence that Thompson was unavailable, admission of Thompson's prior testimony was improper. The state counters that it was relieved of any duty to show Thompson's unavailability by defense counsel's agreement to stipulate to that fact. We think the state's position is correct.

It is true, as Loggins points out, that a waiver of the right of confrontation "must be effected personally by an accused who is acting intentionally and knowledgeably." *Phillips,* 558 F.2d at 496 (citing *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Johnson v. Zerbst,* 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461

(1938)). However, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel, *Reed v. Ross,* 468 U.S. 1, 104 S.Ct. 2901, 2909, 82 L.Ed.2d 1, (1984); *see also Wainwright v. Sykes,* 433 U.S. 72, 91 n. 14, 97 S.Ct. 2497, 2508 n. 14, 53 L.Ed.2d 594 (1977); *Brookhart,* 384 U.S. at 7–8, 86 S.Ct. at 1248–49; *Henry v. Mississippi,* 379 U.S. 443, 451–52, 85 S.Ct. 564, 569, 13 L.Ed.2d 408 (1965), including waiver of the confrontation right. *Brookhart,* 384 U.S. at 7–8, 86 S.Ct. at 1248–49. Such exceptional circumstances include a showing that the defendant neither personally waived nor acquiesced in an attempted waiver by counsel. *Id.*

There is admittedly nothing in the record before us to suggest that Loggins personally agreed to the waiver. He did not comment to the bench when the stipulation was presented to the court, nor was he asked to do so. Moreover, Loggins' counsel admitted at oral argument before this court that Loggins had not been consulted about the decision. However, from the record it appears just as persuasively that Loggins acquiesced in his counsel's decision. In contrast, in *Brookhart,* relied on by Loggins, the defendant's counsel entered a plea inconsistent with his client's express wishes, and the defendant personally interjected his objection when the contrary plea was declared to the court. *Brookhart,* 384 U.S. at 7–8, 86 S.Ct. at 1248–49.

Further, Loggins' counsel's decision to enter into the stipulation seems to have been motivated by sound strategic reasons, and was not inherently coerced as Loggins contends here. Counsel had two choices: to permit the jury to hear Thompson's testimony that he did not remember who hit him, or to decline the stipulation and let the jury speculate as to what Thompson might have said. Given the slim showing advanced by Loggins that Thompson would have testified differently at the second trial, we agree with the Missouri court's conclusion that Thompson's prior testimony only "innured [sic] to [Loggins'] benefit" since Loggins "received the optimum of Thompson's testimony." *Loggins,* 647

S.W.2d at 558. Accordingly, we cannot conclude that counsel made a coerced decision. This is thus not a case like *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), relied on by Loggins. In *Jackson,* the Supreme Court concluded that the "choice" between pleading guilty to an offense, thereby eliminating the possibility of a capital sentence, and pleading not guilty and opening the possibility of receiving a death sentence was inherently coercive. *Id.* at 583, 88 S.Ct. at 1217. Whatever considerations burdened Loggins' counsel's choice here are simply incommensurate with those at stake in *Jackson.* We therefore affirm the decision of the district court denying Loggins' petition.