STATE of Missouri, Respondent,

v.

George FULLER, Appellant.

No. WD 45050.

Missouri Court of Appeals,
Western District.

June 9, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
July 28, 1992.

Application to Transfer Denied
Sept. 22, 1992.

Robert G. Duncan, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before LOWENSTEIN, C.J., and BERREY and SPINDEN, JJ.

LOWENSTEIN, Judge.

Defendant George L. Fuller appeals from a jury verdict of guilty on four counts: first degree murder, § 565.020, RSMo 1986, first degree assault, § 565.050, RSMo 1986, and two counts of armed criminal action, § 571.015, RSMo 1986. Fuller was sentenced on the four counts, respectively, to life without possibility of probation and parole, 30 years, life and 30 years. Fuller's points on appeal are: 1) he should have been granted a continuance to find an essential witness, 2) the court abused its discretion in allowing the state's witness to display his scars to the jury, 3) he was denied a fair trial because a juror failed to disclose on voir dire that he formerly worked for the department of corrections and his mother was a corrections officer, 4) the court erred in not allowing questioning of the police officer who had taken statements from the missing witness, and, 5) the court erred in denying defendant's motion for judgment of acquittal, given that the only evidence of defendant's presence at the scene and opportunity to commit the offense was uncorroborated, conflicting, and impeached testimony by the state's witness.

Out of an extremely complex fact pattern involving many different people, this court will present an abbreviated statement of facts as follows. As background, the victims in this case were Gregory Dean and his brother Allen C. Dean. As a result of the shooting incident leading to this conviction, Allen died, while Gregory, after lengthy hospital stays and complex surgery, survived. Prior to the incident, Gregory had dated Clara Fuller, the sister of defendant George and Thurman Fuller. Ms. Fuller had temporarily lived in Gregory's apartment, until two or three weeks before the shooting. Gregory and Ms. Fuller also broke up before the shooting, Gregory admitting to having "slapped her" before she moved out, but also admitting that Ms. Fuller had insisted that he had "beat her up."

The day after Thanksgiving, Gregory Dean and Allen Dean were in Gregory's apartment. Testimony reveals that several

people came and went during the evening. Two of those people were a Francis Beverly a/k/a Francis Revels and her friend Bruce. Francis apparently had a stolen television which she wished to trade for drugs. At approximately midnight, with Gregory, Allen, Francis, and Bruce in the apartment at the dining room table, Gregory went to the back of the apartment to call his ex-wife. According to Bruce, there was a knock on the door, followed by Gregory saying "come in." Bruce heard a scuffle in the back, and Allen went to the back of the apartment. Francis jumped up and ran out the front door, and Bruce followed. However, after reaching the street, Francis went back up towards the apartment. Bruce continued home, hearing two shots as he was half way down the block.

Gregory testified that Thurman Fuller entered the bedroom while he was on the phone, and disconnected the call. Gregory then heard two shots, the second one striking him in the back. Gregory testified that he then saw the defendant George Fuller down on one knee and holding a sawed-off shotgun. Both Fullers ran out of the bedroom. Gregory called to his brother, and then got to the kitchen, where Allen lay shot in the stomach. As he crawled into the dining room after the telephone, it rang, with his ex-wife on the phone. He told her he and Allen were shot. At that point he also saw Francis in the dining room, taking something from the table. A neighbor, who heard the scuffle, two shotgun shots, and looked out to see Francis leave (for the second time), went into Gregory Dean's apartment. Gregory told the neighbor that "Clara's brother" had shot him; Clara had three brothers.

Three fired shotgun shells were found in the apartment, two in the bedroom and one in the dining room, although all witnesses testified to only two shots. Gregory did not see Thurman Fuller with a gun, only the defendant George Fuller. The police detained and questioned Francis at the scene, but she has not been located since, and did not testify at trial. Her statements to the police which differed or added to the others' testimony were that she saw a man she had seen at a drug house come in the apartment, that Allen who went to the door did not appear to know the man, that the man was holding a shotgun she recognized from the drug house, that the man resembled defendant George Fuller, and therefore she thought it was his brother, that she had seen George Fuller with the man at the apartment door, and that she had seen George Fuller holding the same shotgun when he opened the drug house door "for customers."

## I. The missing witness

■ Defendant Fuller argues that the trial court abused its discretion in refusing to grant his motion for a continuance in order to secure the presence of Francis Beverly. The State maintains that no abuse occurred, given that the defendant's motion, made orally on the day of trial, was not in writing nor accompanied by an affidavit, as required by Rule 24.09, and that Francis Beverly, who had been missing for more than a year, despite extensive efforts to locate her by both sides, was in all probability never to be seen again. In fact, a warrant on another charge had been issued for Francis' arrest. This court denies defendant's point, and holds that no abuse of discretion occurred.

■ The failure to comply with rules prescribing means for requesting a continuance is sufficient grounds to deny the request, *State v. Kechrid*, 822 S.W.2d 552 (Mo.App.1992), *State v. Johnson*, 812 S.W.2d 940, 942–943 (Mo.App.1991), *State v. Adams*, 808 S.W.2d 925, 929 (Mo.App. 1991). The motion, made orally, did not follow Rule 24.09 requirements, in that it was not in writing, and there was no accompanying affidavit. Furthermore, there was no showing of a reasonable belief, as required by Rule 24.10 when a continuance is requested due to the absence of a witness, that Francis Beverly's attendance or testimony would be procured within a reasonable time. Quite to the contrary, there seemed no probability of finding Francis, and in fact both sides had failed during the trial of Thurman Fuller in 1990.

■ A ruling on a motion for a continuance rests within the sound discretion of the trial court, and such a decision will not be reversed on appeal absent a very strong showing of abuse, *State v. Schaal*, 806 S.W.2d 659, 666 (Mo. banc 1991), *cert. denied Schaal v. Missouri*, —— U.S. ——, 112 S.Ct. 976, 117 L.Ed.2d 140 (1992), while the party requesting the continuance bears the burden of showing both an abuse of discretion, *State v. Kechrid*, §22 S.W.2d at 552, and prejudice stemming from the court's denial, *State v. Schaal* at 666. At the time of the motion for continuance in April, 1991, the court said the following:

> THE COURT: Well, since there's a warrant for her arrest, it's not surprising that she is making herself scarce. This case has been going on since 1989, and I think there's a good probability that you will never, ever find your witness if you haven't found her by now. I understand that significant efforts have been made by all parties to try to locate her.

\* \* \* \* \* \*

> THE COURT: ... Under the circumstances, I'll have to deny the motion for a continuance.

The court noted that efforts to find Francis had been fruitless during the previous trial of Thurman Fuller, and that she now had an outstanding warrant for her arrest. When ruling on a request for a continuance based upon the absence of a witness, the trial court may consider the probability that the witness cannot be found, *State v. Lachterman*, 812 S.W.2d 759, 763 (Mo.App. 1991), and a trial court will not be held to have abused its discretion if the continuance probably would not result in the presence of the witness at trial, *Lachterman* at 763, *State v. Leigh*, 621 S.W.2d 515, 517 (Mo.App.1981). The defendant did not present any evidence or make any reasonable showing of ability to procure Francis. Finally, a refusal to grant a continuance for a missing witness will not be reversed on appeal unless it is reasonably probable that the witness' testimony will result in a different outcome, *State v. Reece*, 505 S.W.2d 50, 52 (Mo.1974), *State v. Davis*, 625 S.W.2d 903, 905 (Mo.App.1981). The

evidence Francis was believed to give is not actually exculpatory as to the defendant, George Fuller, for Francis only stated that the one man she saw holding the gun resembled George Fuller, and was perhaps his brother. In fact, if she testified consistently with statements to police, she would have connected the defendant to the shotgun apparently used in the shooting. Francis' testimony does not appear to bear directly upon the innocence of George Fuller, *State v. Petterson*, 780 S.W.2d 675, 679 (Mo.App.1989) (necessity of procuring witness whose testimony bears directly on innocence of defendant), and as such it was no error to deny the continuance. A reversal is not required because Francis' testimony might impeach the testimony of Gregory Dean as to who fired the shots, *State v. Johnson*, 812 S.W.2d 940, 944 (Mo. App.1991). Defendant did not overcome his burden on appeal, no prejudice is shown, and the point is denied.

## II. Exhibition of scars to jury

■ During Gregory Dean's testimony, the court allowed him to show his scars from the gunshot wound to the jury. Defendant George Fuller argues that the prejudicial effect of this display outweighed any probative value to the demonstration. The defendant states that the hospital records and testimony establish that Gregory suffered a "serious physical injury," and further evidence was not needed.

However, defendant was charged with "knowingly caus[ing] serious physical injury to Gregory T. Dean by shooting at him," § 565.050, RSMo 1986. Section 556.061(26), RSMo 1986, defines "serious physical injury" as a "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body." Defendant offered to stipulate that Gregory had suffered a "serious injury," but this does not bar the State from offering relevant, probative evidence, *State v. Black*, 748 S.W.2d 184, 187 (Mo. App.1988). Further, the admission of demonstrative evidence rests largely in the discretion of the trial court, *Black* at 186. The physical evidence of Gregory's scars

was evidence of the required "disfigurement," and as such within the trial court's discretion to allow. The point is denied.

### III. Juror misconduct

■ Defendant argues that Juror Gerald Scott failed to reveal during voir dire that he had formerly worked for the Jackson County department of corrections, while his mother currently was a corrections officer with the department. The pertinent rules regarding juror non-disclosure as relating to these facts are as follows: 1) two types of nondisclosure of information requested of a juror occur, intentional and unintentional; intentional nondisclosure occurs where a) it is not reasonable that the juror misunderstood the question, and b) the juror actually remembers the experience, or purported forgetfulness is unreasonable considering the experience, *Williams v. Barnes Hospital*, 736 S.W.2d 33, 36 (Mo. banc 1987), 2) unintentional nondisclosure occurs where the experience forgotten was insignificant or remote in time, or where the juror could reasonably have misunderstood the question, *Barnes Hospital*, 736 S.W.2d at 36, 3) the determination of intentional v. unintentional nondisclosure is within the sound discretion of the trial judge, *Triplett v. St. Louis Public Service Co.*, 343 S.W.2d 670, 673 (Mo.App. 1961), 4) both parties are entitled to an unbiased jury, *Barnes Hospital*, 736 S.W.2d at 36, 5) where unintentional nondisclosure exists, the inquiry is whether, under the circumstances, the juror's presence on the jury did or may have influenced the verdict so as to prejudice the party seeking a new trial, *Davis v. Kansas City Public Service Co.*, 361 Mo. 61, 233 S.W.2d 679, 685 (1950); *Barnes Hospital*, 736 S.W.2d at 37, and, 6) prejudice is a determination of fact for the trial court, its finding to be disturbed only for an abuse of discretion, *Barnes Hospital*, 736 S.W.2d at 37.

The facts surrounding this point show that Juror Scott was asked, with the others, whether he was "now or ever [had] been engaged in law enforcement work, either as a sheriff, a police officer, a private detective, a security guard, an MP in the military, any type of government agent—FBI agent, federal government agent—that has law enforcement authority?" Juror Scott did not raise his hand, and also did not respond to the subsequent question of whether he was "closely related to or good friends with a police officer?" Subsequent to trial, Juror Scott testified that he had been employed by the department of corrections, and that his mother was currently a correctional officer with the Jackson County Department of Corrections, and had been so employed for 15 years. There was no evidence as to what Scott's former employment had consisted of, nor did the trial court make any findings regarding the juror nondisclosure when it overruled defendant Fuller's motion for new trial. This court, under the rules of juror nondisclosure, and the standard of review, finds that the trial court did not abuse its discretion in denying the motion for new trial. There is no evidence in the record that Juror Scott's previous employment falls within the categories requested in the first question such that Scott failed to make a disclosure in response to the question. Juror Scott's nonresponse to the second is more doubtful. Prison guards, if that is what Juror Scott's mother is, are not strictly police officers. At worst, the nondisclosure by Juror Scott therefore appears unintentional; the trial court's implied finding of no prejudice resulting from Scott's presence on the jury will not be disturbed here on appeal, *Davis*, 233 S.W.2d at 685, *Barnes Hospital*, 736 S.W.2d at 37.

### IV. Admission of hearsay

■ Defendant Fuller claims that the court incorrectly refused to admit the out-of-court statements of the absent Ms. Francis Beverly, in that they qualified under the declarations against penal interest exception to the hearsay rule. This is patently without merit, since Ms. Francis' statements implicating a man who "looked like George Fuller's brother" did not constitute an acknowledgment of Francis' duplicity in the attack on the Deans, *State v. Starks*, 820 S.W.2d 527, 531 (Mo.App.1991), did not necessarily exonerate George Fuller, *State v. McCann*, 792 S.W.2d 890, 893 (Mo.App.

1990), and there is no corroborating evidence to establish a sufficient indicia of reliability, such as a sworn confession or other eyewitness statements, *State v. Twenter*, 818 S.W.2d 628, 637–638 (Mo. banc 1991). The point is denied.

### V. Sufficiency of the evidence

Defendant's final point on appeal is that the verdicts for murder, assault, and armed criminal action were not supported by substantial evidence, that the evidence was entirely circumstantial, and that Gregory Dean's testimony of the shooting was "uncorroborated, conflicting, and impeached."

The standard under which this court reviews this point is that of considering all substantial evidence and inferences in the light most favorable to the verdict, rejecting all contrary evidence and inferences, *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc 1991). This court will neither weigh the evidence, *Feltrop* at 11, nor determine the reliability or credibility of the witnesses, *State v. Hamilton*, 817 S.W.2d 8, 11 (Mo.App.1991).

There was substantial evidence favorable to the verdict against defendant Fuller to support a finding of guilty. Gregory Dean identified both Fullers as entering his apartment, saw George Fuller "down on one knee" with a shotgun after he was shot, and told neighbors and police immediately after the shooting that "Clara's brother" and "George Fuller" had shot him and Allen Dean. While defendant Fuller characterizes this as a case with "circumstantial" evidence, there was an eyewitness which the jury had the right to believe. This court will not weigh the evidence, will not consider conflicting evidence which the jury heard and rejected, *State v. Feltrop*, 803 S.W.2d 1, 11 (Mo. banc 1991), and will not judge the credibility of Gregory Dean, *State v. Hamilton*, 817 S.W.2d 8, 11 (Mo.App.1991). The point is denied.

All concur.