STATE of Missouri, Respondent,

v.

Roger K. DODD, Appellant.

No. WD 56782.

Missouri Court of Appeals,
Western District.

Dec. 7, 1999.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 1, 2000.

548

Kerry G. Rowden, Tuscumbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stacy L. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

Before BRECKENRIDGE, C.J., P.J., LOWENSTEIN, J. and ULRICH, J.

ULRICH, Judge.

Roger Dodd appeals his conviction for sale of a controlled substance, section 195.211, RSMo Cum.Supp.1998, and sentence of five years imprisonment. He claims that the trial court erred in (1) overruling his motion for acquittal because insufficient evidence was presented to prove that he was an accomplice to the sale of a controlled substance; (2) failing to declare a mistrial because the verdict resulted from judicial coercion of a juror; (3) submitting the hammer instruction because the giving of the instruction coerced the jury into returning a guilty verdict; (4) overruling his motion for continuance; (5) refusing to allow him to crossexamine the undercover officer regarding the confidential informants' motive to entrap him; and (6) submitting Instruction Number 5, the verdict director.

The judgment of conviction is affirmed.

In February 1997, Phillip Lewis and Francis Baughman lived in Manor Brook Apartments in Eldon, Missouri, and were confidential informants for the Lake Area Narcotics task force. At approximately 6:00 p.m. on February 5, 1997, Mr. Lewis and undercover drug enforcement officer Jeffrey Collins drove to Mr. Lewis's apartment. When they arrived, Roger Dodd's car was parked in front of the apartment building.

Officer Collins and Mr. Lewis entered the apartment and met Ms. Baughman, Mr. Dodd, and Mr. Dodd's girlfriend, Betty Cates. Ms. Baughman asked Officer Collins if he was still interested in buying one gram of methamphetamine. He indicated that he was, and Ms. Baughman then asked Mr. Dodd, "Do you have that gram?" In response, Mr. Dodd looked at Ms. Cates and asked, "Do you have that?" Ms. Cates pulled a small coin purse from her purse. From the coin purse, Ms. Cates removed two small clear plastic "corner bags."[1] Ms. Cates asked Mr. Dodd if the two bags were both half-gram bags, and he responded, "Yeah." Ms. Cates dropped the bags on the bed in front of Officer Collins. The officer paid Ms. Cates $100 and left the apartment. Subsequent testing revealed that the two bag-

---

1. A "corner bag" is a smaller bag that is made from the corner of a plastic sandwich bag.

gies contained .76 grams of methamphetamine.

Mr. Dodd was charged by information with one count of sale of a controlled substance near public housing, section 195.218, RSMo 1994. He was convicted of the lesser-included offense, sale of a controlled substance, section 195.211, RSMo Cum. Supp.1998, and sentenced to five years imprisonment. This appeal followed.

## I. Sufficiency of the Evidence

■ In his first point on appeal, Mr. Dodd claims that the trial court erred in overruling his motion for judgment of acquittal. He contends that the evidence presented was insufficient to support his conviction for sale of a controlled substance, section 195.211, RSMo Cum.Supp. 1998. Specifically, he claims that insufficient evidence was presented that he actively participated in Ms. Cates's sale of methamphetamine to Officer Collins.

Review of a challenge to the sufficiency of the evidence to support a criminal conviction is limited to determining whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Smith,* 944 S.W.2d 901, 916 (Mo. banc 1997), *cert. denied,* 522 U.S. 954, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997). The evidence and all reasonable inferences drawn from the evidence are viewed in the light most favorable to the jury's verdict, and any contrary evidence and inferences are disregarded. *Id.*

■ Section 195.211.1 provides that it is unlawful for any person to distribute, deliver, manufacture, produce or attempt to distribute, deliver, manufacture or produce a controlled substance. § 195.211.1, RSMo Cum.Supp.1998. Under the theory of aiding and abetting, a person is criminally responsible for the conduct of another if, with the purpose of promoting the commission of an offense, he aids, agrees to aid, or attempts to aid the other person in planning, committing, or attempting to commit the offense. § 562.041.1(2), RSMo 1994; *Bass v. State,* 950 S.W.2d 940, 942 (Mo.App. W.D.1997). "[A]iders and abettors who act with a 'common purpose with active participants in a crime incur criminal liability by any form of affirmative advancement of the enterprise." *State v. Ruddy,* 874 S.W.2d 517, 519 (Mo.App. W.D.1994)(quoting *State v. LaRue,* 811 S.W.2d 40, 44–45 (Mo.App. S.D.1991)). While the defendant's presence at the crime scene alone is not enough to support a conviction, proof of any form of participation by the defendant in the crime is. *State v. Burch,* 939 S.W.2d 525, 529 (Mo. App. W.D.1997); *State v. Perez,* 826 S.W.2d 61, 63 (Mo.App. W.D.1992). Indicia of aiding and abetting include presence at the crime scene and association with others involved with the offense before, during, and after the commission of the crime. *Id.; Ruddy,* 874 S.W.2d at 519.

Mr. Dodd asserts on appeal that the evidence presented at trial demonstrated only his presence at the drug deal and no active participation by him in the transaction. The evidence in this case revealed, however, that although Mr. Dodd did not handle the drugs or the money, he actively participated in the drug deal. After learning that Officer Collins was interested in purchasing one gram of methamphetamine, the confidential informant asked Mr. Dodd, "Do you have that gram?" In response, Mr. Dodd looked at Ms. Cates and asked, "Do you have that?" Ms. Cates pulled a small coin purse from her purse. From the coin purse, Ms. Cates removed two small clear plastic corner bags. Ms. Cates asked Mr. Dodd if the two bags were both half-gram bags, and he responded, "Yeah." Not only was Mr. Dodd present before, during, and after the transaction, he facilitated the sale. The evidence showed that Mr. Dodd was aware that his companion, Ms. Cates, possessed methamphetamine, and that he knew the quantity of the drugs that she possessed. Mr. Dodd facilitated the deal by asking Ms. Cates if she had the drugs that Officer Collins wanted to purchase and by con-

firming for Ms. Cates and Officer Collins the quantity of the drugs. Such evidence was sufficient to show Mr. Dodd's affirmative participation in the crime, sale of a controlled substance, and to support his conviction. Point one is denied.

## II. Polling of Jury

■ In his second point on appeal, Mr. Dodd claims that the trial court erred in failing to grant a mistrial because the verdict resulted from judicial coercion of a juror. After the jury's guilty verdict was read, the court asked if either party desired that the jury be polled. Defense counsel requested a polling. The following colloquy occurred:

THE COURT: Ladies and gentlemen, when one side requests that you be polled, all that means is I'm going to go down the row, call you by number and ask you if this is your verdict. If it is, you state yes. If this is not your verdict, then you need to state no. I'm going to begin with Juror Number 1 on the front row. Juror Number 1, are these your verdicts?

JUROR NUMBER 1: Yes. THE COURT: Juror Number 2?

JUROR NUMBER 2: Yes.

The court asked each of the remaining jurors, including Juror Number 10, the same question asked of Jurors Number 1 and 2, and each responded, "Yes." The following colloquy then occurred:

THE COURT: Ladies and gentlemen, I appreciate you staying with this until a decision was reached. We know that it takes a lot of time out of your day to come in out of your week, your schedules, to come in and do these cases, and we very much appreciate your cooperation in doing this, fulfilling your civil responsibility.

These trials don't work without you. I mean we have to have jurors for that to take place. Your checks will be mailed to you. You do not have to report in—you need to also report in next Wednesday. That's the next date that is set for a trial that you all have to do, and if you want to check, you can call the night before to make sure that the case is going so that you don't make a trip for nothing.

Do any of you have any questions? So that you understand how this works now, what takes place, the defendant has a right to file after-trial motions, and this will be set for a date for that to be done. He also has the right to have a presentence investigation report prepared that will give the Court information about him as to whether to consider what the sentence should be in this matter and whether to consider probation.

The Court can never go up from what a jury does. You've given him the minimum of five years, so I can't go any below that either, so the five years would stay. It's just a matter of whether probation would be granted or not. Yes, sir?

*JUROR NUMBER 10: I got a question on that. It states in there—read what he's guilty of.*

*THE COURT: Yes.*

*JUROR NUMBER 10: He's guilty of selling drugs?*

*THE COURT: Yes.*

*JUROR NUMBER 10: I don't believe that.*

*THE COURT: Well—*

*JUROR NUMBER 10: If it's stated that way, no, I don't believe that.*

*THE COURT: It's acting in concert with another person, and the instruction—this is a short form of what the offense is rather than writing out the whole detailed report. Instruction Number 5 sets out what the crime is, and that is that he acts in concert with another person and that the other person—in this case it says Betty Cates— sold the drugs and that it was knowingly done by her, and then the third element is that he participates in that.*

*JUROR NUMBER 10: So basically what you're saying is he gets the same thing as she does?*

*THE COURT: The charge can be the same. The punishment—the range of punishment can be the same. I honestly don't remember, you know, what she was charged with, to tell you that exactly, and that's up to the prosecutor, but that's the basis for how it's charged, yes.*

*Let me ask you, Number 10, because we polled you and you said this was your verdict. Are you sticking by that this is your verdict?*

*JUROR NUMBER 10: Yes.*

THE COURT: Any other questions? You all are free to go home. Thank you.

(emphasis added).

Mr. Dodd argues that the trial court should not have accepted the jury's verdict because, he claims, Juror Number 10 expressly disagreed with it. He contends that the court should have declared a mistrial pursuant to Rule 29.01(d), which provides:

> When a verdict is returned and before it is recorded the jury shall be polled at the request of any party or upon the court's own motion. If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberation or may be discharged.

Rule 29.01(d). Instead of complying with the rule, Mr. Dodd argues, the court coerced Juror Number 10 until it got the "right answer."

 A coerced verdict does not represent the jury's true unanimous concurrence. *State v. Conway,* 740 S.W.2d 320, 323 (Mo.App. E.D.1987). However, questioning a juror in open court need not be inherently coercive. *State v. Frederick,* 783 S.W.2d 469, 472 (Mo.App. W.D.1990); *State v. Jackson,* 522 S.W.2d 317, 321 (Mo.App.1975). A reviewing court must distinguish between a trial court's effort to eliminate confusion and its attempt to compel a juror to change his vote or to coerce a unanimous verdict. *Id.* Where a juror's

uncertainty results from confusion rather than dissent, a trial court may question him to obtain clarity. *Jackson,* 522 S.W.2d at 322. A court may make inquiry "in a genteel, polite, non-leading and noncoercive manner that will clarify a juror's response." *State v. Hatch,* 724 S.W.2d 643, 645 (Mo.App. W.D.1986). A trial court errs if it continues to question a juror after that juror's answers clearly evince disagreement with the verdict. *Frederick,* 783 S.W.2d at 472. In evaluating the polling procedure, an appellate court must give deference to the views of the trial judge who was present at the scene on whether the juror's ultimate acquiescence in the verdict was free from pressure from the court. *Jackson,* 522 S.W.2d at 322.

In this case, Juror Number 10 initially expressed unequivocal agreement with the jury's guilty verdict. The juror then apparently reread the verdict, which found Mr. Dodd guilty of selling a controlled substance, and expressed confusion about whether the verdict was based on Mr. Dodd having sold drugs as a principal or as an accomplice and whether a principal and accomplice can be charged with and convicted of the same crime. A reasonable understanding of Juror Number 10's statement is that he did not believe that Mr. Dodd was the person who actually transferred possession of the contraband drug and, therefore, did not believe Mr. Dodd was guilty of selling drugs as a principal. The trial court explained that the guilty verdict was based on Instruction Number 5, which submitted the theory of aiding and abetting. It then asked the juror again if the verdict was his. The juror responded that it was. The court did not coerce the juror to change his vote; it simply clarified the juror's confusion. The trial court, therefore, did not err in failing to declare a mistrial. Point two is denied.

## III. Submission of the Hammer Instruction

 In his third point on appeal, Mr. Dodd claims that the trial court erred in

submitting the hammer instruction, MAI–CR3d 312.10, because the giving of the instruction coerced the jury into returning a guilty verdict. The jury began its deliberations at 1:43 p.m. At 4:30 p.m., after two hours and forty-seven minutes of deliberating, the jury sent a note to the court that read:

"Judge Dickerson, we are having a problem on a verdict. Two jurors do not agree with the rest. Now what? Two think by evidence they have seen is not enough to prosecute."

The court indicated that it intended to give the hammer instruction and asked if either party objected. Defense counsel objected, and the objection was overruled. The jury was returned to the courtroom, and the court read Instruction Number 10, MAI–CR3d 312.10. The jury resumed its deliberations and returned to the courtroom at 5:15 p.m. with a verdict. On its verdict form, the jury noted that it reached the verdict at 5:00 p.m.

Mr. Dodd claims that the guilty verdict was coerced because the court gave the hammer instruction when it knew the deadlocked jury's numerical split and the verdict favored by the majority and because the jury deliberated less than one-half hour after receiving the instruction. Mr. Dodd also contends that the court failed to follow MAI–CR3d 312.10 Notes on Use when it did not note in the record the time the hammer instruction was given.

The length of time a jury is allowed to deliberate and the decision whether to give the hammer instruction are within the discretion of the trial court. *State v. Jackson*, 896 S.W.2d 77, 80 (Mo. App. W.D.1995). To establish an abuse of discretion, the defendant must show, based on the record, that the jury's verdict was coerced. *Id.* "The [hammer] instruction itself is not coercive, as it urges frank and open discussion, tolerance, and the desirability of a unanimous verdict but cautions each juror against basing a verdict on evidence he does not believe is true." *Id.*

(quoting *State v. Kinder*, 858 S.W.2d 838, 840 (Mo.App. S.D.1993)).

In determining whether a jury's verdict is coerced by the giving of the hammer instruction, an appellate court considers several factors including (1) the amount of time that the jury deliberates before the instruction is given and the amount of time that elapses between the reading of the instruction and the verdict, (2) whether the trial court knows numerically how the jury is split and the position of the majority, and (3) whether the giving of the instruction conforms with the Notes on Use. *Jackson*, 896 S.W.2d at 80.

In this case, the giving of the hammer instruction did not coerce the jury's verdict. A jury's returning its verdict shortly after the hammer instruction is given does not establish that the jury was coerced to render a verdict contrary to its will. *Id.* The jury deliberated in this case for two hours and forty-seven minutes before the instruction was given by the court and approximately one-half hour after instruction before returning its verdict. In numerous other cases involving similar periods of deliberation, no abuse has been found. *Id.* (jury deliberated two hours and thirty minutes before instruction was given and thirty-three minutes after); *Kinder*, 858 S.W.2d at 839 (jury deliberated two hours and nineteen minutes before and ten minutes after); *State v. Smith*, 686 S.W.2d 43, 45–46 (Mo.App. S.D.1985)(jury deliberated two hours and thirty-eight minutes before and one-half hour after).

Likewise, the court did not abuse its discretion when it gave the hammer instruction after learning the numerical division of the jury with respect to acquittal and conviction. The information regarding the jury's split was unsolicited and voluntarily given to the court. *State v. Broadux*, 618 S.W.2d 649, 652 (Mo. banc 1981); *State v. Rowling*, 687 S.W.2d 246, 247 (Mo. App. E.D.1985); *State v. Brockman*, 634 S.W.2d 575, 577 (Mo.App. E.D.1982).

Finally, Mr. Dodd's contention that the court erred in the procedure of giving the hammer instruction because the court did not comply with the Notes on Use when it did not note in the record the time the hammer instruction was given was not raised in his motion for new trial. As a result, the issue is not preserved, *Kinder*, 858 S.W.2d at 840, and review is limited, at most, to the plain error standard. *State v. Sutherland*, 939 S.W.2d 373, 379 (Mo. banc 1997), *cert. denied*, 522 U.S. 871, 118 S.Ct. 186, 139 L.Ed.2d 125 (1997). Plain error exists only when the court finds that a manifest injustice or a miscarriage of justice has occurred. *Id.* at 380. MAI–CR3d 312.10, Notes on Use 5 provides that the trial court should note in the record the time that the jury first retired to deliberate, the time of giving the hammer instruction, and the time that the jury returns a verdict. In this case, the court noted that the jury began its deliberations at 1:43 p.m. It also noted that the jury sent a note at 4:30 p.m. informing the court that it was deadlocked. The court promptly indicated its intent to give the hammer instruction, and defense counsel objected. The objection was overruled, and the jury was returned to the courtroom and read the instruction. Although the court did not note the exact time the instruction was given, it did note the time when the note from the jury was sent, which caused the giving of the instruction. From this notation a reasonable inference is that the instruction was given shortly after 4:30 p.m. Recording the time of the jury's inquiry, the court's response, the time the hammer instruction is given, and when the jury is returned to the jury room is intended to assist the trial court and appellate review with information that may help determine whether the hammer instruction was coercive when the issue is raise. While a better practice is for the court to also note the exact time it gives the hammer instruction, its failure to do so in this case did not constitute plain error. The failure of the trial court to record the time it gave the hammer instruction did not prevent determination and consideration of the time the jury deliberated before and after the hammer instruction was given in determining whether the instruction was coercive. Point three is denied.

## IV. Motion for Continuance

In his fourth point on appeal, Mr. Dodd claims that the trial court erred in overruling his motion for continuance. He contends that he needed a continuance to obtain the depositions of the confidential informants before trial and that because he was unable to depose the informants, he was unable to present an entrapment defense.[2]

The decision to grant or deny a continuance rests within the sound discretion of the trial court. *State v. Taylor*, 944 S.W.2d 925, 930 (Mo. banc 1997). An appellate court will not interfere with the exercise of that discretion absent a strong showing of abuse. *Id.* A defendant must demonstrate that the denial of a continuance was prejudicial. *Id.* When ruling on a request for a continuance based upon the absence of a witness, the trial court may consider the probability that the witness cannot be found. *State v. Fuller*, 837 S.W.2d 304, 307 (Mo.App. W.D.1992). If a continuance would not result in the presence of the witness at trial, the court will not be held to have abused its discretion in denying the continuance. *Id.* Furthermore, the refusal to grant a continuance for a missing witness will not be reversed on appeal unless the witness's testimony

2. In his point relied on, Mr. Dodd also claims that he needed a continuance to be adequately prepared for trial because the case had been pending for less than one year, the State had endorsed additional witnesses on July 17, 1998, the State answered his request for discovery on July 27, 1998, and Betty Cates's deposition could not be taken before trial because of the prosecutor's schedule. The argument that addresses this point, however, does not refer to these issues. Accordingly, these issues are deemed abandoned. *State v. Wright*, 934 S.W.2d 575, 582 (Mo.App. S.D. 1996).

would probably result in a different outcome. *Id.*

■ Rule 24.09 requires a written motion for continuance accompanied by an affidavit setting forth the facts upon which the application is based unless the adverse party consents to an oral motion. Rule 24.09; *State v. McCarter,* 820 S.W.2d 587, 588 (Mo.App. E.D.1991). When the ground for continuance is absence of a witness, Rule 24.10 requires the application to show the materiality of the potential witness's testimony, the particular facts the witness will prove, due diligence on the part of the defendant to obtain the witness's testimony, and reasonable grounds to believe the attendance or testimony of the witness will be procured within a reasonable time. Rule 24.10; *State v. Morin,* 873 S.W.2d 858, 871 (Mo.App. S.D. 1994); *McCarter,* 820 S.W.2d at 588–589. Failure to comply with Rules 24.09 and 24.10 alone is sufficient to sustain the trial court's ruling. *State v. Sweet,* 796 S.W.2d 607, 613 (Mo. banc 1990), *cert. denied,* 499 U.S. 932, 111 S.Ct. 1339, 113 L.Ed.2d 270 (1991); *State v. Garrison,* 928 S.W.2d 359, 363 (Mo.App. S.D.1996); *Morin,* 873 S.W.2d at 871; *McCarter,* 820 S.W.2d at 588.

In this case, Mr. Dodd's motion for continuance was procedurally deficient. The motion was unaccompanied by an affidavit, and nothing in the record indicates that the State consented to an oral application. Mr. Dodd's motion also failed to allege that the informants' attendance or testimony would be procured within a reasonable time or the particular facts the confidential informants' testimony would prove. Additionally, Mr. Dodd failed to allege or prove that a continuance would result in the presence of the confidential informants at trial or that the witnesses' testimony would have resulted in a different outcome. Mr. Dodd alleged in his motion for continuance that the State was unable to locate and serve subpoenas on the confidential informants for March 18, 1998 depositions. He also alleged that he subpoenaed the confidential informants for an April 21, 1998 appearance in another case, but the informants did not appear. Finally, he conceded in his motion that he had not been able to locate the confidential informants for several months before his trial. Although he argues in his brief on appeal that the confidential informant entrapped him, he did not make such allegation to the trial court, stating only that "[a continuance] is crucial to the defense to obtain the deposition of the confidential informants." He did not identify specific relevant evidence that the informants would provide. Mr. Dodd failed to show that he was prejudiced by the court's denial of his motion for continuance. The trial court, therefore, did not abuse its discretion in overruling the motion. Point four is denied.

## V. Cross Examination of Officer Collins

In his fifth point on appeal, Mr. Dodd claims that the trial court erred in refusing to allow him to crossexamine Officer Jeffrey Collins. Specifically, he contends that he should have been allowed to elicit testimony from Officer Collins that the confidential informants had not been prosecuted and had been paid in exchange for their assistance to the police. He claims such evidence was relevant to establish the confidential informants' motive to entrap him, and the court's failure to permit the crossexamination precluded assertion of the entrapment defense.

■ The State suggests that this court should decline to review this point because it fails to comply with the requirements of Rule 84.04(d) and because Mr. Dodd fails to cite authority in support of his arguments. Rule 84.04(d) sets forth certain requirements for an appellant's point relied on. Rule 84.04(d); *State v. Conaway,* 912 S.W.2d 92, 94 (Mo.App. S.D. 1995). It provides:

Where the appellate court reviews the decision of a trial court, each point shall:

(A) identify the trial court ruling or action that the appellant challenges;

(B) state concisely the legal reasons for the appellant's claim of reversible error; and

(C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

Rule 84.04(d)(1). A point relied on written contrary to the mandatory requirements of Rule 84.04(d), which cannot be comprehended without resorting to other portions of the brief, preserves nothing for appellate review. *Conaway,* 912 S.W.2d at 94. Similarly, where an appellant cites no authority and offers no explanation why precedent is unavailable, appellate courts consider the point waived or abandoned. *Id.*

Mr. Dodd's point relied on and argument are deficient for several reasons. First, the point relied on fails to set forth the specific ruling or rulings of the trial court that are being challenged and wherein and why they are claimed to be erroneous. In fact, the rulings challenged by Mr. Dodd are only vaguely discerned in the argument portion of his brief. Secondly, Mr. Dodd fails to cite any authority for his unspecific argument.

 Despite Mr. Dodd's noncompliance with briefing requirements, if the court were inclined to review the point for plain error under Rule 30.20, review would be impossible because Mr. Dodd did not make an offer of proof of the evidence he claims the trial court erroneously excluded. When an objection to proffered evidence is sustained, the party offering the evidence must make an offer of proof to preserve the matter for appellate review. *State v. Hunter,* 957 S.W.2d 467, 470 (Mo. App. W.D.1997). The offer of proof must state facts that are specific and sufficiently detailed to establish the admissibility of the evidence sought to be introduced. *Id.* Mere statements and conclusions of counsel are not sufficient. *State v. Hurtt,* 836 S.W.2d 56, 59 (Mo.App. S.D.1992) (citation omitted). The preferred method of mak-

ing an offer of proof is to question the witness on the stand out of the jury's hearing. *Hunter,* 957 S.W.2d at 470. An offer of proof is required to allow the trial court to consider the testimony in context and to make an informed ruling as to its admissibility. *Id.*

During the crossexamination of Officer Collins, defense counsel asked if the confidential informants had avoided prosecution or if they had been paid in exchange for their assistance to police. The prosecutor objected to the questions on relevancy grounds. Defense counsel argued that the questions were relevant to show that the confidential informants had a motive to work for the police and to entrap Mr. Dodd. The trial court sustained the objections. Although defense counsel suggested that the informants had entrapped a number of people and were paid to do this, he did not make a specific and detailed offer of proof for the court regarding what Officer Collins' testimony would actually be. He did not question Officer Collins on the stand out of the jury's hearing or make a record for the trial court or this court to review. Having made no offer of proof regarding the evidence he claims the trial court erroneously excluded, Mr. Dodd's point has no merit. Point five is denied.

## VI. Submission of Instruction Number 5, the Verdict Director

In his final point on appeal, Mr. Dodd claims that the trial court erred in submitting Instruction Number 5, the verdict director. He contends that the jury instruction did not define the terms "aided or encouraged" and did not require the jury to find that he committed a specific act.

 As with the previous point, Mr. Dodd's sixth point is procedurally deficient. First, Mr. Dodd fails to cite any authority for his argument. Again, where an appellant cites no authority and offers no explanation why precedent is unavailable, the point in considered waived or abandoned. *Conaway,* 912 S.W.2d at 94.

Additionally, Mr. Dodd has not set forth the instruction he complains of in the argument portion of his brief. Rule 30.06(e) requires that if a point relates to the giving, refusal, or modification of an instruction, the instruction shall be set forth in full in the argument portion of the brief. Rule 30.06(e). Failure to do so preserves nothing for appellate review. *State v. Hoopingarner*, 845 S.W.2d 89, 95 (Mo.App. E.D.1993).

 Despite the fact that this point was not properly briefed, it is reviewed for plain error affecting substantial rights under Rule 30.20. "Instructional error is rarely plain error." *State v. Howard*, 896 S.W.2d 471, 482 (Mo.App. S.D.1995). For an instructional error to constitute plain error, the trial court must have so misdirected the jury as to cause manifest injustice or a miscarriage of justice. *Id.*(citing *State v. Parkus*, 753 S.W.2d 881, 888 (Mo. banc 1988), *cert. denied*, 488 U.S. 900, 109 S.Ct. 248, 102 L.Ed.2d 237 (1988)).

Instruction Number 5, the verdict director, was patterned after MAI–CR3d 304.04. MAI–CR3d 304.04 is used when the evidence shows that the defendant acted with or aided another person in the commission of an offense. MAI–CR3d 304.04, Notes on Use 4. Instruction Number 5 provided, in pertinent part, "that with the purpose of promoting or furthering the commission of that selling a controlled substance, the defendant aided or encouraged Betty Cates in committing that offense." MAI–CR3d 304.04 does not require that the terms "aided or encouraged" be defined. The terms as used in an accomplice liability instruction are words of ordinary usage and easy understanding and, thus, do not require definition. *State v. Newbold*, 731 S.W.2d 373, 385 (Mo.App. W.D.1987). Furthermore, the plain and ordinary meaning of the words entails some affirmative act of assistance or support. The instruction, therefore, required the jury to find something more than Mr. Dodd's mere presence to convict him of selling a controlled substance. The trial court did not plainly err in submitting Instruction Number 5 to the jury. Point six is denied.

The judgment of conviction is affirmed.

All concur.