

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 02-15-00425-CR

---

EUGENE HARRIS TAYLOR                                    APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
TRIAL COURT NO. 1178601D

----------

## MEMORANDUM OPINION[1]

----------

A jury convicted appellant Eugene Harris Taylor of indecency with a child by contact.[2] The trial court suspended the imposition of his sentence and placed him on community supervision. Years later, the trial court revoked appellant's community supervision and sentenced him to eight years' confinement. The

---

[1]See Tex. R. App. P. 47.4.

[2]See Tex. Penal Code Ann. § 21.11(a)(1) (West 2011).

court's judgment revoking appellant's community supervision required him to pay $135 in reparations. In two points, appellant contends that the trial court abused its discretion by revoking his community supervision and violated his right to due process by imposing the reparations. We affirm.

## Background Facts

A grand jury indicted appellant with indecency with a child by contact. A jury found him guilty, assessed eight years' confinement as his punishment, and recommended suspension of his sentence so that he could be placed on community supervision. In accordance with the jury's verdicts, the trial court signed a judgment of conviction that reflected appellant's eight-year sentence, the suspension of the sentence, and his placement on community supervision for ten years.

A condition of appellant's community supervision required him to complete "psychological counseling, treatment, and aftercare sessions for sex offenders" within three years, "with at least one-third of treatment completed each year." Another condition required appellant to have "no contact with any child under 17 years of age unless a chaperon . . . [was] present." Finally, the court required appellant to pay various fees, including a supervision fee of $60 per month and a

sex offender fee of $5 per month. Appellant brought an appeal, and we affirmed the trial court's judgment placing him on community supervision.[3]

Four years after the trial court placed appellant on community supervision, the State filed a petition for the court to revoke the community supervision. The State alleged that appellant had violated conditions by not completing sex offender treatment and by having contact with a child. The trial court held a hearing on the State's petition. Appellant pled not true to the allegations, but after hearing the parties' evidence and arguments, the trial court found that appellant had violated terms of his community supervision and revoked it. The trial court sentenced him to eight years' confinement.

The court's judgment revoking appellant's community supervision stated that he owed $135 in reparations. An attachment to the judgment directed the withdrawal of that amount from appellant's inmate trust account. A bill of costs, which was certified by a deputy district clerk,[4] showed that appellant owed $135 as "Reparation (Probation Fees)." Another filed document that was addressed to the trial court and generated by the community supervisions and corrections

---

[3]See *Taylor v. State*, No. 02-11-00037-CR, 2012 WL 662373, at *4 (Tex. App.—Fort Worth Mar. 1, 2012, pet. ref'd) (mem. op., not designated for publication).

[4]The certification stated, "I hereby certify that the foregoing is a correct account of the Court Costs, Fees, and/or Fines adjudged against the Defendant in the above entitled and numbered cause . . . ."

3

department showed that the $135 reparations amount comprised $120 in probation fees and $15 "DUE TO CSCD." Appellant brought this appeal.

## The Revocation of Appellant's Community Supervision

In his first point, appellant argues that the trial court abused its discretion by revoking his community supervision. We review an order revoking community supervision for an abuse of discretion. *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Powe v. State*, 436 S.W.3d 91, 93 (Tex. App.—Fort Worth 2014, pet. ref'd). A trial court abuses its discretion when it makes a decision that lies outside the zone of reasonable disagreement. *Davis v. State*, 329 S.W.3d 798, 803 (Tex. Crim. App. 2010), *cert. denied*, 132 S. Ct. 128 (2011).

In a revocation hearing, the State must prove by a preponderance of the evidence that the defendant violated at least one of the terms and conditions of community supervision as alleged in the petition to revoke. *Powe*, 436 S.W.3d at 93*; Lawrence v. State*, 420 S.W.3d 329, 331 (Tex. App.—Fort Worth 2014, pet. ref'd); *see Hacker*, 389 S.W.3d at 865 (explaining that in a revocation context, a preponderance of the evidence means "that greater weight of the credible evidence which would create a reasonable belief that the defendant has violated a condition of his probation"). "The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling." *Lawrence*, 420 S.W.3d at 331; *see Jones v. State*, 589 S.W.2d 419, 421 (Tex. Crim. App. [Panel Op.] 1979) (stating that courts must review evidence in the light most favorable to

4

the revocation decision). A trial court does not abuse its discretion by revoking probation upon proof of a single violation, regardless of evidence that the probationer otherwise fulfilled the conditions. *See Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980); *Norton v. State*, 434 S.W.3d 767, 773 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

In its revocation petition, the State alleged,

[D]uring the effective period of . . . community supervision, the Defendant violated the terms and conditions set by the Court as follows:

1. **SEX OFFENDER TREATMENT:** The Defendant was ordered to submit to sex offender treatment evaluation as directed by the supervision officer. As recommended by the evaluation, attend and participate fully in and successfully complete psychological counseling, treatment, and aftercare sessions for sex offenders with an individual or organization as specified by or approved by the Court or the supervision officer. . . . Treatment must be completed within three years of its initiation, with at least one-third of treatment completed each year.

In violation of this condition, the Defendant was suspended from sex offender treatment on or about June 29, 2015.

2. **SEX OFFENDER TREATMENT:** The Defendant was ordered to submit to sex offender treatment evaluation as directed by the supervision officer. . . .

In violation of this condition, the Defendant failed to complete one-third of sex offender treatment within one year of its initiation.

3. **SEX OFFENDER TREATMENT:** The Defendant was ordered to submit to sex offender treatment evaluation as directed by the supervision officer. . . .

In violation of this condition, the Defendant failed to complete two-thirds of sex offender treatment within two years of its initiation.

5

4. **CONTACT WITH CHILDREN:** The Defendant was ordered to have no contact with any child under 17 years of age unless a chaperon approved by the Court or supervision officer is present.

In violation of this condition, the Defendant had contact with a child under 17 years of age without a [chaperon] approved by the court or supervision officer present on or before November 13, 2014.

Appellant pled not true to each of these allegations, but after considering the parties' presentation of evidence, the trial court found the second through fourth allegations to be true. The evidence supports the trial court's findings. Jennifer Aguilar, appellant's probation officer, testified that appellant had been placed in a county-approved sex offender treatment program and had attended that program for nineteen months. But according to Aguilar, although that program required appellant to complete thirty goals at a rate of ten per year, he completed only six in the nineteen months.[5] Because appellant was "way behind" in completing the program and because he was dissatisfied with aspects of the program, a judge allowed him to switch treatment providers. Appellant spent several months working with the second treatment provider but completed few goals.[6] His second treatment provider eventually suspended him from the

---

[5]Concerning appellant's failure to complete the goals and to progress on treatment, Aguilar testified, "He showed little effort on progress reports to complete assignments . . . . Whatever his therapist [did], he blame[d] the therapist, taking little responsibility for his effort."

[6]Appellant's second treatment provider testified that appellant completed therapy with her that amounted to "about three goals." Appellant told his second treatment provider that he routinely had contact with minors at his church because he handed out bulletins to them.

program because his probation officer said that appellant had been taking pictures of children and peeping in adults' windows. Thus, the evidence demonstrates that appellant did not complete one-third of his sex offender treatment within a year of its initiation or complete two-thirds of the treatment within two years, just as the State alleged in its revocation petition.

Viewing the evidence in the light most favorable to the trial court's revocation decision, we conclude that the trial court did not abuse its discretion by finding that he violated a term of his community supervision—completing at least one-third of his sex offender treatment each year—and by revoking his community supervision.[7] *See Lawrence*, 420 S.W.3d at 331. We overrule appellant's first point.

### The Propriety of Reparations Included in the Judgment

In his second point, appellant contends that the trial court violated his right to due process when it imposed unpaid probation fees as reparations in the judgment revoking his community supervision.[8] Specifically, he contends that (1) reparations awarded in a judgment cannot include probation fees; (2) if

---

[7]In his challenge to revocation on this ground, appellant argues that he substantially complied with treatment and that mitigating circumstances excused his failure to complete treatment; appellant appears to concede that the trial court's finding that he did not complete treatment at the required pace was "factually accurate."

[8]Appellant correctly contends that due process principles apply in proceedings related to the revocation of community supervision. *Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012) (op. on reh'g).

7

reparations may include probation fees, the State failed to prove that he owed the fees and had not paid them; and (3) the evidence shows that he owed no probation fees. We cannot agree.

We recently resolved an appeal in which the appellant similarly contended that a trial court had violated her right to due process by assessing reparations based on her failure to pay community supervision fees. *Tucker v. State*, Nos. 02-15-00265-CR, 02-15-00266-CR, 2016 WL 742087, at *1 (Tex. App.—Fort Worth Feb. 25, 2016, pet. ref'd) (mem. op., not designated for publication). The appellant contended that the assessment of reparations violated due process because the record did not contain evidence that the fees were owed, because the State had not alleged the appellant's failure to pay the fees in its revocation petition, and because "probation fees [could not] be included as reparations." *Id.* We rejected each of these arguments, reasoning,

> The State did not accuse Appellant of failing to pay her probation fees in its petition to proceed to adjudication, nor was her community supervision revoked for her failure to pay such fees. . . . There is no authority that the State must allege the failure to pay such fees as a ground for revocation in order to hold a defendant responsible for unpaid administrative fees. *See Edwards v. State*, Nos. 09-13-00360-CR, 09-13-00361-CR, 2014 WL 1400747, at *2 (Tex. App.—Beaumont Apr. 9, 2014, no pet.) (mem. op., not designated for publication) (observing that there is no authority for the proposition that a defendant's responsibility to pay the fees arises only if the State alleges the failure to pay as a ground for revocation).
>
> In granting community supervision, a trial court must fix a fee of no more than $60 per month, and if community supervision is later revoked, the trial court "shall enter the restitution or reparation due and owing on the date of the revocation" in a revocation of a

8

suspended sentence. Tex. Code Crim. Proc. Ann. art. 42.03[,] § 2(b), art. 42.12[,] § 19(a) (West Supp. 2015). *This Court has consistently held that unpaid probation fees may be included as reparations in judgments adjudicating guilt. See, e.g., Steen v. State*, No. 02-13-00559-CR, 2014 WL 4243702, at *2 (Tex. App.— Fort Worth Aug. 28, 2014, pet. ref'd) (mem. op., not designated for publication); *Strange v. State*, No. 02-14-00055-CR, 2014 WL 3868225, at *1 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op., not designated for publication) (citing *Boyd v. State*, No. 02-11-00035-CR, 2012 WL 1345751, at *2 (Tex. App.—Fort Worth Apr. 19, 2012, no pet.) (mem. op., not designated for publication)); *McKinney v. State*, No. 02-12-00479-CR, 2014 WL 1510095, at *1–2 (Tex. App.—Fort Worth Apr. 17, 2014, pet. ref'd) [(mem. op., not designated for publication)]; *Brown v. State*, No. 02-08-00063-CR, 2009 WL 1905231, at *2 (Tex. App.—Fort Worth July 2, 2009, no pet.) (mem. op., not designated for publication).

*The amount of the community supervision fees owed [was] supplied by the Balance Sheet and the Certified Bill of Costs, both of which are part of the record. This is sufficient evidence to support the amount of $120 in community supervision fees assessed as reparations. See Steen*, 2014 WL 4243702 at *2 (holding that certified bill of cost "was enough to support inclusion in the judgment of $2,507 in statutorily-authorized, community-supervision fees"); *Houston v. State*, 410 S.W.3d 475, 479 (Tex. App.—Fort Worth 2013, no pet.) (holding that certified bill of costs provided support in the record for imposition of $570 in court costs owed by appellant); *Strother v. State*, No. 14-12-00599-CV, 2013 WL 4511360, at *3–4 (Tex. App.—Houston [14th Dist.] Aug. 22, 2013, pet. ref'd) (mem. op., not designated for publication); *cf. Johnson v. State*, 423 S.W.3d 385, 395–96 (Tex. Crim. App. 2014) ("[A]lthough a bill of costs is not required to sustain statutorily authorized and assessed court costs, it is the most expedient, and therefore, preferable method.").

*Id.* at *1–2 (emphasis added).

Our decision in *Tucker* resolves the principal questions presented here. First, it forecloses appellant's position that probation fees may not be included in a judgment as reparations. *See id.* at *2 (collecting cases in which we concluded

9

that probation fees may be reparations); *see also Stuckey v. State*, No. 07-14-00082-CR, 2015 WL 5578498, at *1 (Tex. App.—Amarillo Sept. 22, 2015, pet. ref'd) (holding similarly).  Second, our *Tucker* decision precludes appellant's position that the State failed to prove that he owed the probation fees as reparations; like in *Tucker*, the record in this case contains a certified bill of costs stating that appellant owed the fees and a balance sheet prepared by the community supervision and corrections department showing that he was $135 in arrears.  *See* 2016 WL 742087, at *2.  These documents qualify as sufficient evidence to support the reparations.  *Id.*; *see also Beard v. State*, Nos. 09-13-00391-CR, 09-13-00392-CR, 2013 WL 6705981, at *3 (Tex. App.—Beaumont Dec. 18, 2013, no pet.) (mem. op., not designated for publication) ("[W]e conclude that the revocation restitution/reparation balance sheet and bill of costs . . . constitute sufficient evidence of the amount of administrative fees and court costs owed . . . .").

We also reject appellant's argument that another document in the record, titled "List of Fee Breakdowns," precludes the assessment of reparations in the judgment.  That document, which was issued three days after the certification of the bill of costs and on the same day as the balance sheet, shows a "0.00" balance remaining on probation fees, but the document does not show whether appellant owed reparations.  We agree with the State that viewing the certified bill of costs, the balance sheet, and the "List of Fee Breakdowns" collectively and in the light most favorable to the award of reparations—*see Mayer v. State*, 309

10

S.W.3d 552, 557 (Tex. Crim. App. 2010); *Beard*, 2013 WL 6705981, at *3—the evidence is sufficient to support the award.

The cases that appellant relies on to contest the reparations award are distinguishable on their facts. For example, in *Romine v. State*, one of our sister intermediate appellate courts held that the amount of reparations assessed in a judgment was too high because the State conceded it was and because the State's revocation petition alleged a lower amount. No. 06-13-00071-CR, 2013 WL 4002610, at *2 (Tex. App.—Texarkana Aug. 6, 2013, no pet.) (mem. op., not designated for publication). The State has made no such concession here, and the State's revocation petition in this case did not make any representation about the amount of probation fees or reparations owed.

In *Lewis v. State*, another case that appellant relies on, we struck $320 in reparations, relying on the State's agreement that the reparations were $300 too high and holding that no evidence in the record supported the additional $20 as a crime stoppers fee. 423 S.W.3d 451, 459–60 (Tex. App.—Fort Worth 2013, pet. ref'd). We held that there was "no evidence of any kind" that appellant failed to pay the $20 fee. *Id.* at 460. We did not consider, as we did later in *Tucker*, whether the district clerk's bill of costs qualified as evidence supporting the fee.

In *Strange*, the final case relied upon by appellant as an analogue, the State conceded that reparations should not have been included in the judgment. 2014 WL 3868225, at *1. We stated that the record did not contain evidence "demonstrating that any fees were owed." *Id.* Again, however, we did not

11

discuss whether the district clerk's certified bill of costs supported the reparations. *Cf. Weatherspoon v. State*, No. 03-15-00236-CR, 2016 WL 286384, at *3 (Tex. App.—Austin Jan. 22, 2016, no pet.) (mem. op., not designated for publication) ("The statutory authority, coupled with the certified bill of costs, provides a sufficient basis for the costs."); *Rahim v. State*, No. 06-14-00147-CR, 2015 WL 2437509, at *4 (Tex. App.—Texarkana May 22, 2015, no pet.) (mem. op., not designated for publication) ("Because the supplemental record contains a bill of costs supporting the amount of court costs assessed, we find that there is sufficient evidence to support the trial court's assessment of court costs."); *Steen*, 2014 WL 4243702, at *2 ("The certified bill of cost . . . was enough to support inclusion in the judgment of $2,507 in statutorily-authorized, community-supervision fees.").

For all of these reasons, we conclude that the trial court did not violate appellant's right to due process by imposing the unpaid probation fees as reparations in its judgment revoking community supervision. We overrule appellant's second point.

## Conclusion

Having overruled appellant's two points, we affirm the trial court's judgment.

/s/ Terrie Livingston

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL:  LIVINGSTON, C.J.; WALKER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  June 2, 2016