STATE of Missouri, Respondent,

v.

Jimmy Daryl SMITH, Appellant.

No. WD 31929.

Missouri Court of Appeals,
Western District.

March 2, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied May 4, 1982.

---

James R. Wyrsch and Charles E. Atwell, Kansas City, for appellant; Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, of counsel.

John Ashcroft, Atty. Gen., Steven H. Akre, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

PRITCHARD, Judge.

By the verdict of a jury appellant was found guilty of the offense of leaving the scene of an automobile accident, § 577.060, RSMo (L.1977, S.B. No. 60, p. 662, § 1, eff. Jan. 1, 1979), and the jury assessed his punishment at two years imprisonment. On proof of two prior felony convictions,

the court enhanced punishment to four years imprisonment in the Division of Corrections. One issue presented is whether the evidence was sufficient to establish that appellant was driving the vehicle which left the scene of the accident in question.

Bill Wright, a police officer of the City of Bethany, Missouri, testified: At 9:15 p. m. (the time of his report), on April 6, 1979, he and Officer Nible came upon a dark green pickup sitting in a ditch along the northbound lane of 20th Street. Appellant was sitting behind the wheel of the pickup. Upon his observation that appellant's clothing was mussed, his hair messed up, his eyes bloodshot, the odor of beer was strong on his person and in the pickup, his speech was slurred, he could not stand up, and he was weaving back and forth, the officer concluded that he was intoxicated, and took him into custody for careless and reckless driving and also drunken driving. At the time, the left front portion of the pickup had considerable damage, and it was headed south in the northbound lane on the wrong side of the road. On the way to the courthouse with appellant and Officer Nible, who had joined them, and as they were approaching 17th and Miller Streets, they got a call that a couple of ladies wanted to report an accident. The two ladies, Billee Fordyce and her sister, Frances Ray, were standing out in the street waving at the officers to stop, which they did. Mrs. Fordyce stated that her car had been hit by a dark green pickup. The point where Wright found the dark green pickup was four or five blocks south from where the ladies stopped the officers. They were standing next to the officer's car, which had its window rolled down, and Mrs. Fordyce stated that she had been hit by a dark green pickup, but she did not know the license number. The pickup had also tried to run over her and her sister. Mrs. Ray pointed her finger at appellant, who was sitting in the back of the car, and said, " 'That is the guy that was driving the pickup. I seen him when he hit us and stopped,' and she pointed the finger at Mr. Smith through my window." There was no objection to this testimony.

Officer Nible testified that the damage to the pickup was to its left front headlight, around it, the left front fender was crumpled, and a part of the chrome was missing. He heard one of the ladies say as to appellant who was in the back seat of the police car, " 'Well, that is the fellow there that was driving the pickup that struck us awhile ago.' "

Frances D. Ray was in the car with her sister on the night in question when it was involved in a collision. They were travelling from the east off the highway to the west on 20th Street, and stopped at a stop sign to get onto Miller Street, and there was a dark green pickup directly in front of them, which came to the railroad crossing, stopped, cut around in a circle, and was coming head-on towards their vehicle and hit it on the back side. She testified that the time was about 8:45 p. m. The pickup stopped after it hit them, and Mrs. Ray saw its driver at that time, and identified him as such at the trial. Mrs. Ray testified further that after the collision, she and her sister went back to her home, a quarter of a block away, after which Mrs. Ray went back to the car and moved it to her sister's home. At that time, Mrs. Ray got out of the car to go back into the house, and " * * * [A]nd here he came again in his truck, coming from—Q. The same truck? A. Yes.— coming from the east on the same street. I was out in the road and I tried to get him to stop. He wasn't going to stop." She jumped out of the way. "Q. He was out in the street? A. He was in the truck. Q. But where was the truck? A. It was apparent to me—he was in the truck, but I could visualize him, I could see him. Q. Could you see him then? A. That is when I seen him. My sister never did see him. Q. But you did see him? A. (Witness nods head.) Q. You did see him? A. Umhum. Q. And this is the man (indicating)? A. (Witness nods head.) Q. Could you say 'yes'? A. Yes." Mrs. Ray walked back to her sister's home and by the time she got into the house, the police car was in front of it.

Some discrepancies appeared in Mrs. Ray's testimony in her cross-examination. The first time the dark green pickup came around, they could not tell how many people were in the truck. It was about 8:45 p. m., and she saw it again ten minutes later at the most, at which time there was one person in the truck, and then all she could see was the dark hair on his face, at the time she was getting away from her sister's car. "Q. And you saw one person at that time which was ten minutes, approximately, after the accident? A. Yes. Q. And you did not seem to be able to identify the person at the time of the accident, who was in the truck? A. No, but can I make a statement? THE COURT: No. MR. PAR-KER: No. THE COURT: Just answer the questions. Q. (By Mr. Parker) You did not see the man at that time? A. I saw him one time. Q. You saw him one time. Thank you. Now, have you seen this defendant any other times after the night of April 6th until today? A. I saw him one time. Q. And when was that? A. In the courtroom. Q. In a courtroom. At that time were you able to identify this man as the driver of the truck you saw that night? A. Yes. Q. You did? Is that your testimony, that you did? A. It has been a year ago. It is not fair. MR. MOULTHROP: I object to counsel belaboring the witness. She's already testified she saw him. A. Not only that, I saw that truck and the headlight was tore out where he hit our car." After the policeman stopped in front of the car, and told the ladies they got the same man who was driving the dark green pickup, she testified that: "I seen him back there and I said, 'That is him.'" She did not see anyone when the truck hit the car. On redirect examination, Mrs. Ray testified that she couldn't be sure that she saw the driver at the time of the collision but "I know I seen him", and "A. All I'm going to say is I'm not accurately sure at this time which time it was I seen him, but I know I seen him. It all happened too fast."

Billee Fordyce saw the pickup ahead of her car. It sped up, made a U-turn, and headed back toward them. She swerved toward the ditch and the truck struck her

car on the back end of the driver's side. She was not able to identify the driver at that time, but she did see appellant in the back of the police car.

Officer Donald Stockwell made an investigation of the scene of the collision, and found parts of a car there in the street. A chrome part of the left headlight matched that piece which was missing from the dark green pickup truck.

■ Without doubt, there exist discrepancies and inconsistencies in Mrs. Ray's testimony. On direct examination, she testified that she saw appellant at the time of the collision as the driver of the pickup truck, and identified him at trial as such. She saw him in the truck again as he passed the car, and according to her, tried to run her down. Then she saw appellant sitting in the back of the police car, and identified him as being the driver of the pickup truck, and said, "I seen him when he hit us and stopped." [Officer Nible corroborated what one of the ladies said at that time.] Then, on cross-examination, Mrs. Ray acknowledged that they could not tell how many people were in the truck the first time it came around. She saw it 10 minutes later, with one person in it, and all she could see was the dark hair on his face. She further testified that she did not seem to be able to identify the person in the truck at the time of the accident, but she was steadfast in her testimony that she saw him one time, and also later in court, at which time she identified appellant as the man she saw. She also saw the truck with its damaged headlight where it hit their car. Considering all of the testimony, and the facts and circumstances, Mrs. Ray's identification of appellant as the culprit is not so inherently unbelievable or improbable that it should be disregarded as a matter of law, thus causing the state's case to fail. In *State v. Holt*, 592 S.W.2d 759, 774[24, 25] (Mo. banc 1980), the court said, "In *State v. Brager*, 497 S.W.2d 181, 182 (Mo.1973), this court held that a witness' credibility in view of discrepancies in his testimony is a matter for resolution by the jury. The credibility and weight of the testimony are for the

jury to determine. *State v. Dodson*, 490 S.W.2d 92, 95 (Mo.1973). A jury may believe all, some, or none of a witness' testimony in light of the facts, circumstances and other testimony of the case. *State v. Wynn*, 391 S.W.2d 245, 247 (Mo.1965)." See also 98 C.J.S. Witnesses, § 468, pp. 339, et seq. In this case, there is at least some believable evidence which establishes appellant as the driver of the pickup truck which collided with the other vehicle, after which he left the scene, and this distinguishes *Kansas City v. Stamper*, 528 S.W.2d 769 (Mo.App.1975), where there was no evidence whatsoever placing the defendant personally at the scene of the collision or that he was the person who was driving the vehicle when it left the scene. The trial court did not err in overruling appellant's motion for judgment of acquittal.

■ Appellant's Point II is that the court erred in giving verdict directing Instruction No. 5, because it did not inform the jury as to the entire range of punishment—that of assessment of a monetary fine or imprisonment or both, under § 557.036, RSMo 1978. The matter is ruled by *State v. Van Horn*, 625 S.W.2d 874 (Mo. banc 1981), holding that it is the prerogative of the court, not the jury, to impose county jail imprisonment or a fine. See also *State v. Bradford*, 627 S.W.2d 281 (Mo. banc 1982). The point is overruled.

■ Point III is that the court erred in admitting evidence of his intoxication at the time in question. There was no objection to the evidence, nor mention thereof as error in the motion for new trial as being impermissible evidence of other crimes. All that was said is that the evidence was irrelevant and immaterial to the charge of which appellant stood accused. It is not requested that the matter be reviewed as plain error, and this court declines to do so sua sponte. Point III is overruled.

■ Point IV presents for consideration as plain error the testimony of Wright, Nible and Fordyce, as to what witness Ray said as to the identification of appellant when he was in the back seat of the police car, as being inadmissible hearsay. There was no objection to any of this testimony, and the matter is not set forth in the motion for new trial. If the jury chose to accept the direct testimony of Mrs. Ray as to appellant being the driver of the pickup truck, as it must have done, the hearsay testimony of the other three witnesses as to what Mrs. Ray said was merely cumulative. No prejudicial error appears, and Point IV is overruled.

■ At the close of the trial, before submission to the jury, appellant's counsel orally moved the court for a continuance on the ground that there was an impeaching witness, appellant's initial counsel, who would testify that at the preliminary hearing, Mrs. Ray had denied that she was able to identify the driver of the truck. The initial counsel was during the noon hour contacted by appellant's trial counsel, but initial counsel could not attend the trial because of being in court in Kansas City that afternoon. Appellant's counsel acknowledged that there was information in his file as to Mrs. Ray's testimony at the preliminary hearing, and counsel for the state told the court that it had taken place about a year before. Although Rule 24.08 provides the court may continue a criminal proceeding for good cause shown, Rule 24.09 requires that an application therefor shall be by written motion accompanied by an affidavit, setting forth the facts upon which the application is based. Rule 24.10 sets forth what the application shall show, including due diligence on the part of the applicant to obtain the witness or testimony. These rules were not followed. Appellant's counsel stated that he was willing to recall the identifying witness (to question her about the prior testimony) but chose not to do so, and the court overruled the motion. The trial court had great discretion in either granting or denying the continuance. *State v. Cuckovich*, 485 S.W.2d 16, 21 (Mo. banc 1972); *State v. Oliver*, 572 S.W.2d 440, 445 (Mo. banc 1978). Where the testimony of the absent witness would not go to the guilt or innocence of a defendant, but only to impeachment of other witnesses (as here), it is not error to deny the continuance. *State v. Mercer*, 600

S.W.2d 45, 47 (Mo.App.1980). In this case, furthermore, the trial court could conclude that there was not due diligence in securing the attendance of the witness, or his testimony by deposition for a year before trial. Point V, raising this issue, is overruled.

■ Point VI contends that the trial court erred in applying the persistent offender statute, § 558.016, RSMo 1978, because the information did not inform appellant that he was subject to an extended term, nor did it state the statutory citation of the persistent or dangerous offender statute. The matter is not contained in the motion for new trial; it is not requested to be reviewed under the plain error rule; and it will therefore not be considered.

The judgment is affirmed.

All concur.