**Fate McMILLER, Appellant,**

v.

**A.L. LOCKHART, Director ADC, Appellee.**

**No. 89–1712.**

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1990.

Decided Sept. 27, 1990.

commit either assault or theft. Exhibits U, W, Y.

Larry G. Dunklin, Little Rock, Ark., for appellant.

Joseph V. Svoboda, Little Rock, Ark., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and HENLEY, Senior Circuit Judge.

BOWMAN, Circuit Judge.

Fate McMiller, a state prisoner seeking federal relief under 28 U.S.C. § 2254, appeals an order of the District Court[1] dismissing his petition for writ of habeas corpus. We affirm.

## I.

On October 13, 1982, Barbara Jean Phillips, feeling ill, left work early. It was approximately 1:30 p.m. when she arrived at her apartment in North Little Rock and noticed that her front door was open. Phillips assumed that her son had left the door open. Upon opening the closet door in her bedroom, she discovered a man holding a lug wrench and one of her gold rings. The man pushed her back, handed her the ring, and fled. Phillips later noticed that the door to her apartment had been pried open.

The incident was investigated by North Little Rock police officer Randy Johnson. On the general report taken the day of the burglary, Johnson notes that Phillips stated "she had seen the suspect before and would find out his name." In an interview a day later, Phillips told Johnson that, without a doubt, she recognized the suspect as Fate McMiller, an individual she had known since childhood and with whom she had gone to school. Phillips obtained a felony arrest warrant for McMiller on October 19, 1982, charging him with burglary. That same day, the warrant was served on McMiller, who was incarcerated at the time on an unrelated charge.

Kelly Carrithers, a staff attorney for the Pulaski County Public Defender's Office, was appointed to represent McMiller, who made bond in January 1983. At an omnibus hearing held on July 18, 1983, McMiller waived a jury trial. A court trial was set for July 28, 1983. After their initial meetings, McMiller apparently made little effort to contact Carrithers about his upcoming trial.

The trial was later rescheduled for August 8, 1983, but McMiller did not appear, and a warrant was issued for his arrest. He was arrested and incarcerated, and trial was reset for January 23, 1984. On January 18, 1984, Carrithers issued subpoenas for two alleged alibi witnesses. These witnesses were Janet Heard, McMiller's sister, and Wilma Romes, his girlfriend and companion at the time of the burglary.[2] Heard was served, but failed to appear. Romes was in a Texas prison at the time and was not served with the subpoena. Carrithers informed McMiller of these facts on the day of the trial, January 24, 1984, and he requested that she move for a continuance. He insisted upon this tactic even after Carrithers advised him that the judge would not grant the motion.

At trial, Carrithers announced that she was prepared to proceed. However, she did request a continuance. The exact interchange follows:

1. The Honorable G. Thomas Eisele, United States District Judge for the Eastern District of Arkansas.

2. There is a dispute as to when McMiller informed Carrithers of these alibi witnesses. Carrithers believes that it was some time after McMiller's arrest in August 1983, most likely shortly before his trial took place in January 1984. McMiller claims that he gave Carrithers the names and addresses of Heard and Romes as early as January 1983.

Carrithers: Your Honor, we are ready, and I have one thing to add for the record. That is Mr. McMiller gave me two witnesses he wanted subpoenaed. One was a Janet Heard at 924 E Street, North Little Rock. My subpoena was served on the 20th, and Miss Heard hasn't appeared, either yesterday when it was originally set, nor today. The other witness that we issued a subpoena for was a Wilma Romes at 820 F Street, Dixie Addition, North Little Rock. I found out that after trying to serve it that Miss Romes was in the penitentiary somewhere. Of course, I didn't have that information available to me from Mr. McMiller or any other source. He wants me to ask the Court for a continuance at this time.

The Court: That's denied.

Carrithers: Okay.

Trial Transcript at 16–17.

Only three witnesses testified during the guilt phase of the trial: the victim, Barbara Phillips, McMiller, and Randy Johnson, the investigating officer. On direct, Phillips identified McMiller as the man she discovered in her closet and claimed that she called to him by name as he fled. She also mentioned that McMiller had visited her shortly after the burglary and offered to pay for the damage to the door if she agreed not to prosecute. Carrithers's cross-examination disclosed inconsistencies between Phillips's statements immediately following the incident and her testimony at trial. It also revealed that Phillips went to McMiller's home and discussed the alleged burglary with his family. Carrithers closely questioned Phillips concerning a possible motive for accusing McMiller of the crime.

McMiller presented a different version of the event. He insisted that he was "riding in the company of another lady" at the time of the burglary, Trial Transcript at 31, and claimed that Phillips falsely identified him in retaliation for a dispute between the two over money. McMiller also testified that he told the investigating officer, Ran-

dy Johnson, about the dispute. In rebuttal, Johnson could not recall McMiller having made any such statement.

At the close of testimony, the court entered a finding of guilt and sentenced McMiller, as a habitual offender with four or more previous felonies, to 30 years imprisonment to be served consecutive to any sentence in effect at the time of judgment. The conviction and sentence were affirmed on direct appeal, and a subsequent petition for post-conviction relief was denied.

Thereafter, McMiller filed a *pro se* habeas corpus petition pursuant to 28 U.S.C. § 2254, claiming that his trial counsel was ineffective, that the trial court's denial of his request for a continuance constituted a due process violation, and that the evidence adduced at trial was insufficient to convict. With appointed counsel, he attended two evidentiary hearings before a United States Magistrate.[3]

At the first hearing, McMiller and Carrithers appeared, as did Janet Heard, McMiller's sister. Heard testified that she was present when Phillips visited McMiller's home and that Phillips gave the impression that she had no personal knowledge of the identity of the burglar. Wilma Romes was subpoenaed, but did not appear at the hearing. In order to secure her presence at the second hearing, the Magistrate issued an order permitting defense counsel to retain investigative services. Romes was located and testified at the second hearing that she had been with McMiller on the day of the burglary.

The Magistrate issued an extensive Recommended Findings of Fact and Conclusions of Law. The District Court adopted these findings in their entirety and dismissed McMiller's petition. The Court later entered an order granting in part McMiller's application for a certificate of probable cause, thus clearing the way for this appeal.

On appeal, McMiller contends that he did not receive a fair trial because of the ineffective assistance of trial counsel and the

---

**3.** The Honorable John F. Forster, Jr., United States Magistrate for the Eastern District of Ar-

kansas.

refusal of the trial court to grant a continuance. We affirm.

## II.

■ McMiller claims that his trial counsel was constitutionally ineffective as she failed properly to investigate and to secure the attendance of Wilma Romes and Janet Heard at trial. A convicted defendant claiming that counsel's assistance was so defective as to require reversal of a conviction must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Addressing the performance component, we conclude that Carrithers's representation of McMiller did not fall below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064. Bearing in mind that this Court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, our review of the record satisfies us that Carrithers rendered constitutionally "adequate assistance." *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

Carrithers's job was not easy. Released on bond, McMiller made no effort to contact her and failed to appear at his first scheduled trial. An alias warrant was required to locate him. Only during his ensuing custody did he express an interest in his upcoming trial. Carrithers testified before the Magistrate that McMiller told her only generally what Janet Heard and Wilma Romes would offer in his defense. She did attempt to secure their attendance at trial by subpoena, using the addresses supplied by McMiller. Although served, Heard twice had opportunities to appear but failed to do so. Romes's address obviously had changed, and she was in a Texas penitentiary at the time of trial. Carrithers was unaware of this fact, and McMiller did not enlighten her or assist her search.

Given the opportunity during his testimony at trial, McMiller did not mention Romes as his alleged alibi witness. He testified only that he was "riding in the company of another lady" on the day of the burglary. Trial Transcript at 31. This is astonishing given the importance he now attributes to Romes's testimony.

Carrithers did prepare for trial and vigorously defended McMiller. She made notes on the police report to guide her cross-examination and requested a continuance because of the absence of Romes and Heard. Carrithers cross-examined Phillips extensively on the inconsistencies between her testimony at trial and the report she gave the police shortly after the burglary. Her cross-examination also disclosed Phillips's visit to McMiller's home. In these circumstances, we hold that McMiller has failed to overcome the presumption that Carrithers rendered adequate assistance.

Assuming *arguendo* that Carrithers's representation was professionally unreasonable, we do not believe that McMiller has shown sufficient prejudice to warrant setting aside his conviction. Heard, McMiller's sister, testified at the evidentiary hearing concerning Phillips's conversation with McMiller's family wherein Phillips gave the impression that she personally had not identified the intruder. Carrithers already had elicited this information at trial in her cross-examination of Phillips. Romes told the Magistrate that she was with McMiller throughout the day of the burglary. She was a convicted felon, and her credibility would have been an issue at trial. We are not convinced there is a reasonable probability in this case that the testimony of these two women would change the outcome of the proceeding. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700, 104

S.Ct. at 2071.[4]

### III.

█ McMiller contends that the refusal of the trial judge to grant a continuance was so fundamentally unfair as to prejudice his right to a fair trial. "[B]road discretion must be granted trial courts on matters of continuances." *Morris v. Slappy*, 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). "To determine whether the trial court has abused its discretion, the reviewing court will consider factors including counsel's time for preparation, conduct of counsel at trial and presence of prejudice in the record." *Nerison v. Solem*, 715 F.2d 415, 418 (8th Cir.1983), *cert. denied*, 464 U.S. 1072, 104 S.Ct. 983, 79 L.Ed.2d 220 (1984).

Considering these factors, we cannot say that the trial court abused its discretion in this case. Carrithers had ample time to prepare for trial. She appeared with McMiller at his arraignment on January 17, 1983 and remained his appointed counsel through the trial on January 24, 1984. Originally set for July 28, 1983, McMiller's trial was continued a number of times, at least once as a result of McMiller's failure to appear. As heretofore discussed, Carrithers's conduct at trial was constitutionally adequate, and McMiller has failed to show that he was prejudiced by her performance. Carrithers informed the court that she was ready to proceed, and the record reflects that readiness. The trial court's refusal to grant a further continuance did not deny McMiller a fair trial.

The order of the District Court dismissing McMiller's petition for writ of habeas corpus is affirmed.

---

**4.** To support his ineffectiveness claim, McMiller cites this Court's opinion in *Wade v. Armontrout*, 798 F.2d 304 (8th Cir.1986). The facts of *Wade* clearly are distinguishable from those of this case. The extent of counsel's investigation in *Wade* was one conversation with the defendant. Unlike Carrithers, Wade's counsel apparently made no effort whatsoever to locate defense witnesses or to present defense evidence at trial.