# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2406

_____

Remon Lee,

            Appellant,

      v.

Mike Kemna, Superintendent; Jeremiah
(Jay) Nixon, Attorney General, State of
Missouri,

            Appellees.

      Appeal from the United States
      District Court for the Western
      District of Missouri.

         [PUBLISHED]

_____

Submitted: March 13, 2000

Filed:   May 25, 2000

_____

Before MORRIS SHEPPARD ARNOLD and FAGG, Circuit Judges, and BENNETT,[*] District Judge.

_____

PER CURIAM.

Remon Lee was tried in Missouri state court on charges of first degree murder and armed criminal action. During his trial, Lee's alibi witnesses failed to appear and Lee moved for a continuance until the witnesses could be brought to the courtroom.

_____

[*]The Honorable Mark W. Bennett, Chief Judge, United States District Judge for the Northern District of Iowa, sitting by designation.

The continuance was denied and Lee was convicted and given a concurrent sentence of life without parole on the murder charge and ten years on the armed criminal action charge. The trial court denied Lee's motion for a new trial which alleged ineffective assistance of trial counsel and violation of his due process rights.

On direct appeal, Lee claimed his trial motion for a continuance and his postconviction motion for a new trial were improperly denied. The Missouri Court of Appeals found the continuance motion was properly denied because it did not comply with Missouri Supreme Court Rule 24.09, which sets out the required form of the motion, and Rule 24.10, which lists the required elements of the motion. The court also found the new trial motion was properly denied because Lee failed to produce evidence showing counsel was ineffective. Lee then filed a 28 U.S.C. § 2254 petition claiming the denial of his motion for a continuance violated due process. The district court denied Lee's habeas petition finding the claim procedurally defaulted. We granted a certificate of appealability on the question of whether denial of Lee's motion for a continuance was a due process violation.

Lee first argues he did not procedurally default his claim. We disagree. Federal habeas review is not available on Lee's due process claim if the Missouri Court of Appeals "rest[ed] [its decision] on a state law ground that is independent of the federal question and adequate to support the judgment," regardless of "whether the state law ground is substantive or procedural." Coleman v. Thompson, 501 U.S. 722, 729 (1991); accord Hall v. Delo, 41 F.3d 1248, 1249-50 (8th Cir. 1994). The Missouri Court of Appeals rejected Lee's claim because his motion for a continuance did not comply with Missouri Supreme Court Rules 24.09 and 24.10 and thus the claim was procedurally defaulted.

We reach the merits of Lee's procedurally defaulted claim only if he can show cause for his default and prejudice or actual innocence. See Wyldes v. Hundley, 69 F.3d 247, 253-54 (8th Cir. 1995). Lee claims his default should be excused because

-2-

trial counsel's failure to follow Missouri's motion rules constituted ineffective assistance of counsel. We reject Lee's claim because ineffective assistance of counsel must be presented to the state court as an independent claim before it can be used to establish cause for a procedural default. See id. at 253. Although Lee raised a claim of ineffective assistance in his postconviction motion for a new trial, he did not specifically allege failure of trial counsel to present properly the motion for a continuance. See id. (habeas petitioner must present to state court same specific claim of ineffective assistance made out in habeas petition). Thus, the Missouri courts had no opportunity to consider whether Lee's trial lawyer was ineffective for failing to present the motion properly and Lee cannot present that claim now. Because Lee has not shown cause for his default, we do not reach the issue of prejudice.

An actual innocence claim requires Lee to show "'new reliable evidence . . . not presented at trial'" establishing "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" Id. at 254 (citations omitted). Lee has failed to make the required showing because the factual basis for the affidavits he relies on as new evidence existed at the time of the trial and could have been presented earlier. See Meadows v. Delo, 99 F.3d 280, 282 (8th Cir. 1996). Even assuming the alibi testimony was new evidence, Lee did not show with the required likelihood that reasonable jurors would not have convicted based on the word of three family members when the testimony of four prosecution witnesses refuted the alibi.

We affirm the denial of Lee's habeas petition.

BENNETT, Chief District Judge, dissenting.

As Justice Fortas observed, "There is no higher duty of a court, under our constitutional system, than the careful processing and adjudication of petitions for writs of habeas corpus." *Harris v. Nelson*, 394 U.S. 286, 292 (1969). "Today, as in prior centuries, the writ is a bulwark against convictions that violate 'fundamental fairness.'"

*Engle v. Isaac*, 456 U.S. 107, 126 (1982) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 96-97 (1977) (Stevens, J., concurring)). With this view of the importance and purposes of a writ of *habeas corpus*, I am unwilling to condone what I believe was a conviction in Lee's case that violates "fundamental fairness." Furthermore, I do not believe that Lee's due process claim has been procedurally defaulted, as the majority concludes, even under the current status of federal *habeas* law, which, in my view, increasingly elevates tortuous and tangled procedural impediments over fundamental fairness. *See Coleman v. Thompson*, 501 U.S. 722, 759 (1991) (Blackmun, J., dissenting) ("I believe that the Court is creating a Byzantine morass of arbitrary, unnecessary, and unjustifiable impediments to the vindication of federal rights" in *habeas corpus* actions). For these reasons, I must respectfully dissent.

To explain why I believe that the decision below must be reversed, I find that a more detailed discussion of the circumstances of this case is required. Lee was tried in Missouri state court on charges of first-degree murder and armed criminal action. At the opening of his trial, Lee's defense counsel promised the jury an alibi defense, complete with three alibi witnesses, who would establish that Lee was not in Kansas City, the location of the murder, on the day of the murder, but was instead in California. Indeed, the promised alibi witnesses—Lee's mother, stepfather, and sister—had voluntarily traveled from California to Missouri to testify on Lee's behalf at his trial and were present at the courthouse as trial began. Moreover, these witnesses were under subpoena and had previously met with defense counsel.

In its case in chief, the government presented the testimony of two witnesses who identified Lee as the getaway driver and two other witnesses who placed Lee in Kansas City within the twenty-four hours preceding the murder. However, the government presented no physical evidence linking Lee to the murder. On the Thursday morning before the state rested its case, Lee's alibi witnesses were present at the courthouse. However, following a lunch recess, the three witnesses could not be located. Lee's alibi witnesses have since provided affidavits in which they aver that

-4-

they left the courthouse only after being told by a court security officer that their testimony would not be needed until the following day, because the state's case would take up the remainder of the day. No judge of any stripe, state or federal, trial or appellate, has yet passed on the reason for the alibi witnesses' sudden disappearance from the courthouse just before Lee's defense was to begin.

Upon discovering that Lee's three alibi witnesses were not present in the courthouse after the lunch recess, Lee's counsel orally informed the court of that fact and requested that the court grant a continuance in order for him to attempt to secure the testimony of the witnesses. Trial counsel also informed the court that the witnesses were thought to be still in town, because Lee's mother and stepfather had plans to attend a religious activity in Kansas City that evening. The trial court announced that the trial could not be continued to the following day, Friday, because the judge intended to be at the hospital when his daughter had surgery. The trial court also informed the parties that the trial could not be continued to the following Monday, because the judge had another trial set to commence that day. The state trial judge concluded, without a scintilla of evidence or a shred of information as to why the alibi witnesses were absent, and without making any attempt to enforce the subpoenas for their attendance, that the alibi witnesses had "abandoned" Lee and his defense. As a result of the denial of Lee's oral motion for a continuance, no alibi defense was presented, and not surprisingly—indeed inevitably—Lee was convicted by the state court jury.

On direct appeal, the Missouri Court of Appeals affirmed the denial of Lee's motion for a continuance, concluding that the denial of the motion was proper, because Lee's counsel failed to comply with two Missouri Supreme Court Rules, Rules 24.09 and 24.10. Rule 24.09 requires that motions for continuances be in writing and supported by affidavits, unless the adverse party consents to an oral application. Rule 24.10 sets out the information that must be included in a motion for a continuance that is grounded on the absence of a witness. The state trial court, however, had not relied

upon either of these rules in denying Lee's motion for a continuance, nor had the state resisted the motion on these grounds.

In this action for *habeas corpus* relief, Lee asserts that the denial of his motion for a continuance violated his federal right to due process. The federal district court to which Lee's petition for *habeas corpus* relief was presented concluded from the reliance by the state court of appeals upon its procedural rules that Lee's due process claim was procedurally defaulted. Specifically, the court below concluded that the decision of the Missouri Court of Appeals was based on an adequate and independent state law ground, which bars federal *habeas corpus* review. The majority agrees, and concludes further that Lee cannot overcome this impediment, because Lee is unable to demonstrate either "cause and prejudice" or "actual innocence."

A federal court's review of a *habeas* petition is barred when a state court dismisses or rejects a prisoner's claims on adequate and independent state law grounds, unless a petitioner can demonstrate either (1) cause and prejudice or (2) actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). I concur with the majority's conclusions that Lee is unable to demonstrate "cause and prejudice" or "actual innocence." Lee cannot establish the necessary "cause," because he failed to raise before the state court his asserted "cause," which he alleges was his trial counsel's ineffective assistance in failing to follow Missouri's procedural rules for a continuance. *Wyldes v. Hundley,* 69 F.3d 247, 253 (1995), *cert. denied*, 517 U.S. 1172 (1996). I also agree that Lee cannot satisfy the demanding criteria of an "actual innocence" claim, because he has failed to offer new, reliable evidence of his innocence in light of which "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Knox v. Iowa*, 131 F.3d 1278, 1282 (8th Cir. 1997). If Lee had been allowed a short continuance and had been able to present his alibi defense, he might very well have been acquitted, but he might also have been convicted. While the evidence against Lee was not strong, I recognize that a jury would have been free either to accept or reject his alibi defense. Therefore,

I cannot find that Lee meets *Schlup*'s high hurdle of "actual innocence"—even though he may in fact be innocent.

I nevertheless dissent, because I do not believe that we need to reach the question of whether Lee can overcome denial of his due process claim on adequate and independent state law grounds. Rather, I find that the decision of the Missouri Court of Appeals did not rest on any such adequate and independent state law ground. Therefore, I would hold that federal *habeas* review is *not* precluded in this case.

A panel of this court recently discussed the nature of, and limitations to, the bar to federal *habeas* review provided by denial of a claim on an "adequate and independent state law ground" as follows:

> Procedural default of a claim under state law may constitute an independent and adequate state ground, *Harris v. Reed*, 489 U.S. 255, 262 (1989), but only if the state procedural rule is firmly established, regularly followed, and readily ascertainable. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). The underlying principle is "that failure to follow state procedures will warrant withdrawal of a federal remedy only if those procedures provided the habeas petitioner with a fair opportunity to seek relief in state court." *Easter v. Endell*, 37 F.3d 1343, 1347 (8th Cir. 1994). Or, as Justice Holmes expressed it, "[w]hatever springes the State may set for those who are endeavoring to assert rights that the State confers, the assertion of federal rights, when plainly and reasonably made, is not to be defeated under the name of local practice." *Davis v. Wechsler*, 263 U.S. 22, 24, 44 S. Ct. 13, 68 L. Ed. 143 (1923).

*White v. Bowersox*, 206 F.3d 776, 780 (8th Cir. 2000).

The "adequacy" of a state procedure presents a question of federal law. *Sloan v. Delo*, 54 F.3d 1371, 1379 (8th Cir. 1995), *cert. denied sub nom. Sloan v. Bowersox*, 516 U.S. 1056 (1996). A state law rule is not "adequate" to defeat federal *habeas* review if the rule is "unclear," "thwarts the assertion of federal rights," is "confusing," or is not "firmly established and regularly followed." *Id.* at 1379-80; *see also White*, 206 F.3d at 780 (to be "adequate" to bar federal *habeas* review, a rule must be "firmly established, regularly followed, and readily ascertainable"). A state law ground is not "independent" if it is in any way "linked to or dependent on any federal law." *Easter*, 37 F.3d at 1345. I have no trouble joining the majority's implicit conclusion that the state procedural rules at issue here, Missouri Supreme Court Rules 24.09 and 24.10, are not "linked to or dependent on any federal law," and thus constitute "independent" state law grounds for denial of Lee's motion for a continuance. However, I strenuously disagree that these rules present any "adequate" state law ground to bar federal *habeas* review of Lee's due process claim.

In some recent decisions, this court has found certain state procedural rules were not "adequate" to bar federal *habeas* claims. In *White*, this court concluded that the petitioner was denied a fair opportunity to seek relief in his case, because the procedural rule that barred his second amended petition for state post-conviction relief was neither firmly established nor readily ascertainable. *White*, 206 F.3d at 780. The court found that the Missouri Supreme Court had introduced for the first time in White's post-conviction proceedings two limitations on a recently-recognized remedy for attorney abandonment of a petitioner in post-conviction proceedings. *Id.* at 781. However, this court found that neither limitation could reasonably have been anticipated in advance of its application in the petitioner's case. *Id.* at 781. Importantly, the court held that whether or not a limitation was "implicit in, and correctly derived from, Missouri's prior precedents," or "appear[ed] in retrospect to form part of a consistent pattern of procedures, it should not be applied as a procedural default if the defendant could not be deemed to have been apprised of its existence." *Id.* (citing *Ford*, 498 U.S. at 423). Therefore, "even if . . . th[e state] rule forms a

consistent pattern with prior [state] precedents, we could not apply it as a procedural default in this [*habeas*] case."

Similarly, in *Easter*, this court concluded that Rule 37 of the Arkansas Rules of Criminal Procedure did not meet the due process requirement of "adequacy" to bar a federal *habeas* claim. *See Easter*, 37 F.3d at 1345-46. The rule in question reinstated state post-conviction relief proceedings and set deadlines for the filing of state actions for such relief. *Id.* at 1344. In *Easter*, although this court concluded that Rule 37 otherwise provided constitutionally adequate procedures, it nevertheless was not adequate to bar federal *habeas* claims, because it was not a "firmly established rule when it was applied to Easter." *Id.* at 1346. This court reiterated that conclusion in *Pearson v. Norris*, 52 F.3d 740 (8th Cir. 1995), holding,

> As in *Easter*, the state has not demonstrated that Pearson was put on notice that he had a Rule 37 remedy before his filing deadline passed. The availability of Rule 37 was not firmly established when Pearson needed to pursue it. Accordingly, Pearson's Rule 37 default is not adequate to support a denial of federal review of the merits of Pearson's constitutional claims.

*Pearson*, 52 F.3d at 742.

The state procedural rules that purportedly stand as bars to Lee's federal *habeas* due process claim are Missouri Supreme Court Rules 24.09 and 24.10. Rule 24.09 requires that motions for continuances be in writing and supported by affidavits, unless the opposing party consents to an oral application. Missouri Supreme Court Rule 24.10 states that a motion for a continuance, written or oral, based on the absence of a witness must state specific matters, including the materiality of the evidence and diligence to obtain it, reasonable grounds for belief that the attendance of the witness can be obtained within a reasonable time, the facts the witness will prove and that no

-9-

other person who could have been procured for trial can prove those facts or prove them so fully, the applicant's good faith, and that the witness is not absent by the connivance, consent, or procurement of the applicant. The Missouri Court of Appeals has explained that "the reason for this rule is obvious, it permits the trial court to pass on the merits of the request." *State v. Robinson*, 864 S.W.2d 347, 349 (Mo. Ct. App. 1993). However, to determine the "adequacy" of the bar to federal *habeas* claims raised by these rules, I must determine whether the application of these rules by Missouri appellate courts to the circumstances presented when Lee moved for a continuance based on the sudden absence of his alibi witnesses in the midst of his trial was firmly established, regularly followed, or readily ascertainable. *White*, 206 F.3d at 780.

I acknowledge that Missouri appellate courts have routinely held that "[f]ailure to comply with Rules 24.09 and 24.10 alone is sufficient to sustain the trial court's ruling" denying a continuance. *See, e.g., State v. Dodd*, 10 S.W.3d 546, 555 (Mo. Ct. App. 1999) (treating a motion for a continuance that was not accompanied by an affidavit as an oral motion to which the state had not consented); *accord Robinson*, 864 S.W.2d at 349 (stating failure to comply with Rule 24.09 was sufficient to deny a request for a continuance, citing *State v. Diamond*, 647 S.W.2d 806, 808 (Mo. Ct. App. 1982)); *State v. Lopez*, 836 S.W.2d 28, 32 (Mo. Ct. App. 1992) (citing non-compliance with either rule, and stating "[d]efendant's failure to request the continuance by written motion accompanied by an affidavit is sufficient grounds to affirm the trial court's ruling"); *State v. Fuller*, 837 S.W.2d 304, 306 (Mo. Ct. App. 1992) ("The failure to comply with rules prescribing means for requesting a continuance is sufficient grounds to deny the request.") (citing cases); *State v. Anderson*, 785 S.W.2d 299, 302 (Mo. Ct. App. 1990) ("We agree that the defendant's failure to request the continuance by a written motion accompanied by an affidavit is sufficient ground for this court to affirm the trial court's ruling," thus relying on failure to meet the requirements of Rule 24.09, but finding "[m]ore important" was non-compliance with the requirement of Rule 24.10 that the personal presence of the witness could reasonably be obtained); *State v.*

*Fletcher*, 758 S.W.2d 476, 478 (Mo. Ct. App. 1988) ("'Defendant's failure to file the request in writing accompanied by an affidavit showing good cause as required by Rule 24.09 is sufficient ground to affirm the trial court's action.") (quoting *Diamond*, 647 S.W.2d at 808); *State v. Gasaway*, 720 S.W.2d 3, 5-6 (Mo. Ct. App. 1986) ("Where a defendant fails to comply with Rule 24.10, the trial court does not abuse its discretion in denying a continuance.").

I acknowledge further that Missouri appellate courts have routinely affirmed denials of oral motions for continuances that were prompted by the absence of a witness when the motions were made at or near the time of trial, or even during trial, on the ground that the motions did not comply with Rule 24.09 or Rule 24.10. *See State v. Wolfe*, 13 S.W.3d 248, 261 (Mo. 2000) (*en banc*) (affirming denial of an oral motion for continuance made in the course of trial after the trial court's denial of a motion to introduce an affidavit by the absent witness); *Dodd*, 10 S.W.3d at 555 (not indicating precisely when the oral motion for continuance was made, although it was apparently made in proximity to or during trial, and affirming denial of the motion); *Robinson*, 864 S.W.2d at 348 (affirming denial of a motion for continuance pursuant to Rules 24.09 and 24.10 made at "docket call" three days before trial); *Lopez*, 836 S.W.2d at 31-32 (affirming denial of an oral motion for a continuance based on the absence of a witness apparently made on the second day of trial as an alternative to a request for late endorsement of another witness); *Fuller*, 837 S.W.2d at 306 (affirming denial of an oral motion for a continuance owing to the absence of a witness made on the day of trial); *State v. McCarter*, 820 S.W.2d 587, 588 (Mo. Ct. App. 1993) (affirming denial of an oral motion for a continuance owing to the absence of a witness made on the morning of trial); *Anderson*, 785 S.W.2d at 302 (affirming denial of an oral motion made on the day of trial); *Fletcher*, 758 S.W.2d at 478 (affirming denial of an oral motion for a continuance made "[a]fter the jury was seated"); *Gasaway*, 720 S.W.2d at 5 (affirming denial of an oral motion for a continuance made on the third day of trial); *Smith*, 633 S.W.2d at 416 (affirming denial of an oral motion for a continuance made "at the close of trial, before submission to the jury").

However, in *not one* of these cases was the absence of the witness sudden or unexpected. *Wolfe*, 13 S.W.3d at 261 ("Defense counsel told the judge that she had been trying to contact the [absent witness], but no one had seen her in weeks" and "[t]he State replied [to the motion for continuance] that it also could not find the [absent witness]."); *Dodd*, 10 S.W.3d at 555 (both the state and the defendant had attempted to subpoena the absent witnesses for prior proceedings and the defendant "conceded in his motion that he had not been able to locate the [absent witnesses] for several months before his trial"); *Robinson*, 864 S.W.2d at 348 (in premature reliance on a plea agreement that fell through, the defendant had not availed himself of the opportunity to depose the state's witnesses, even though the state had made those witnesses available); *Lopez*, 836 S.W.2d at 31-32 (nothing indicated the absence of the witness was a surprise); *Fuller*, 837 S.W.2d at 306 (the absent witness "had been missing for more than a year, despite extensive efforts to locate her by both sides"); *McCarter*, 820 S.W.2d at 588-89 (in the oral motion, defendant alleged that the absent witness had not been located, had left town, and had no exact address at which he could be located, and counsel stated further that "[w]e are not sure if we can . . . find this man," and the court concluded that the motion was "insufficient on the matter well known before trial" and "the factual basis for the motion was not a last minute or unexpected surprise"); *Anderson*, 785 S.W.2d at 302 (it appeared that the absent witness "had fled the jurisdiction and that a 2-year effort to locate her had been unsuccessful"); *Gasaway*, 720 S.W.2d at 5 (although the oral motion for continuance was made on the third day of trial, the absent witness, who had appeared pursuant to a subpoena on the first day, had been absent the second day of trial, the trial court had issued a writ of body attachment, and the sheriff had made a "diligent" but unsuccessful effort to locate the witness); *Smith*, 633 S.W.2d at 416 (trial counsel had not shown "due diligence in securing the attendance of the witness, or his testimony by deposition for a year before trial," even though the testimony the absent witness was intended to impeach was known to counsel for about a year before trial). The situation was slightly different in *Fletcher*:

> Counsel stated that she was not aware of two of the potential alibi witnesses until a very short time ago. She was unaware of the third until the morning of the trial. The defendant stated he expected an alibi witness to appear but she had been subpoenaed to a child support hearing and could not appear.

*Fletcher*, 758 S.W.2d at 478. Nevertheless, the absence of the alibi witnesses in that case appeared to have more to do with lack of diligence than sudden and unexpected absence of a witness who had already presented himself or herself at the time of trial. *See id.*

Indeed, the reliance in all of these decisions on the defendant's prior knowledge of the unavailability of the witness, or circumstances that should have suggested to counsel that the witness would be unavailable at trial, implies that a truly unexpected absence of a witness, as occurred in this case, might excuse failure to comply or relax compliance with the written motion requirements of Rule 24.09 and the content requirements of Rule 24.10. *See, e.g., McCarter*, 820 S.W.2d at 589 (specifically noting that failure to comply with the requirements of Rule 24.09 was sufficient grounds to deny a motion for continuance, stating that this was "particularly true where the factual basis for the motion was not a last minute or unexpected surprise").

Thus, I do not find that the application of Rules 24.09 and 24.10 was "firmly established" or "regularly followed" in the circumstances in which Lee made his motion for continuance, that is, circumstances involving the sudden and unexplained absence of alibi witnesses who had been in attendance just prior to a recess after which their testimony was required and who were under subpoena to appear at that time. *Cf. White*, 206 F.3d at 780 (the limitations on the newly-recognized claim of attorney abandonment were introduced only in the petitioner's case, and therefore were not "firmly established" at the time his claim was denied on the basis of those limitations); *Pearson*, 52 F.3d at 742 ("The availability of Rule 37 [of the Arkansas Rules of

-13-

Criminal Procedure] was not firmly established when Pearson needed to pursue it."); *Easter*, 37 F.3d at 1346 (Rule 37 of the Arkansas Rules of Criminal Procedure otherwise provided constitutionally adequate procedures, but nevertheless was not adequate to bar federal *habeas* claims, because it was not a "firmly established rule when it was applied to Easter").

Moreover, the possibility that application of Rules 24.09 and 24.10 to the circumstances presented in Lee's case was somehow "implicit in, and correctly derived from, Missouri's prior precedents," or "appear[ed] in retrospect to form part of a consistent pattern of procedures," is not sufficient to bar his federal *habeas* claims, because those rules "should not be applied as a procedural default if the defendant could not be deemed to have been apprised of" their applicability. *White*, 206 F.3d at 780 (citing *Ford*, 498 U.S. at 423). The circumstances in which Lee moved for a continuance make it particularly unlikely that he could be deemed to have been apprised of the applicability Rules 24.09 and 24.10. As a practical matter, it is simply unrealistic to suppose that, when confronted during trial with the sudden and unexplained absence of witnesses who have previously been in attendance, both voluntarily and under subpoena, counsel will be able to produce a written motion, supported by an affidavit, as required by Rule 24.09, detailing expressly the information required by Rule 24.10. Indeed, it appears that neither the trial judge, Lee's counsel, nor opposing counsel considered the applicability of these rules in the circumstances, although the Missouri Court of Appeals later relied upon them to affirm the trial court's denial of a continuance. Therefore, I would hold that applicability of these rules in Lee's circumstances was not only not "firmly established" or "regularly followed," it was not "readily ascertainable." *Id.*

There are yet more grounds on which I would hold that failure to comply with Rules 24.09 and 24.10 does not constitute an "adequate and independent state law ground" for denial of federal *habeas* review. I would also hold that application of these rules in Lee's circumstances stands as no bar, because the rules would "thwar[t] the

assertion of federal rights" in the circumstances of this case. *Sloan v. Delo*, 54 F.3d 1371, 1379 (8th Cir. 1995), *cert. denied sub nom. Sloan v. Bowersox*, 516 U.S. 1056 (1996). In *Henry v. Mississippi*, 379 U.S. 443 (1965), the United States Supreme Court held that a state procedural ground was "adequate" to preclude federal review of a constitutional claim only if it outweighed the strong federal interest in hearing federal claims. *Henry*, 379 U.S. at 447; *cf. Sykes*, 433 U.S. at 88-90 (holding Florida's "contemporaneous objection rule" to be an adequate state ground based on the important state interests it serves). A review of case law reveals instances in which federal courts have found the state interest furthered by the rule in question was not adequate to bar federal *habeas* claims, because that state interest had already been fulfilled. *See Smart v. Scully*, 787 F.2d 816, 820 (2d Cir. 1986); *see also Caston v. Costello*, 74 F. Supp. 2d 262, 274 (E.D.N.Y. 1999) (holding that a state appellate court's application of the "contemporaneous objection rule" did not preclude *habeas* review); *United States ex re. Smith v. DiBella*, 314 F. Supp. 446, 447 (D. Conn. 1970) (holding that rigid adherence to a state procedural rule, which required an appellant to submit a motion to correct a trial court's findings within two weeks after the findings are filed, was "so lacking in fundamental fairness as to constitute 'a miscarriage of justice which should not be permitted to occur.'") (quoting *Christoffel v. United States*, 190 F.2d 585, 594 (D.C. Cir. 1950)).

This line of authorities is exemplified by the decision of the Second Circuit Court of Appeals in *Smart*, 787 F.2d 816. In *Smart*, a petitioner prosecuting his *habeas* action *pro se* sought federal review on the ground that his incompetence at the time he entered his guilty plea had rendered his guilty plea involuntary. *Id.* at 817. In response, the state asserted that the petitioner had procedurally defaulted, because he had not sworn to his allegations of fact, as required by state procedure. *Id.* at 818. The district court denied the petition on the ground that the failure to include sworn allegations constituted procedural default. *Id.*

The Second Circuit Court of Appeals, however, reached the merits of the petitioner's claim, finding that the state court's denial was not based on an "adequate and independent" state ground warranting federal refusal to consider the federal issues. *Id*. at 820. The appellate court reasoned that the state interest in having petitioners swear to their allegations of fact was not sufficient to preclude federal consideration of the petitioner's *habeas* claim, because the petitioner's pleading, "while not in compliance with state procedure, notified the court as to his constitutional claim and gave the state court a clear opportunity to address his claim or allow him to replead." *Id*. The court reasoned further that "Smart's type of error does not at all implicate the concerns expressed in [*Wainwright v. Sykes,* 433 U.S. 72 (1977)]," which related to improper diminution of "the significance of the state proceeding as the appropriate forum for the adjudication of all claims in a state criminal prosecution" to obtain some "strategic advantage." *Id.* at 820-21. Instead, the court could "perceive of no tactical benefit to be derived from Smart's failure," where "[h]is noncompliance with a threshold requirement of post-conviction relief caused him to suffer dismissal of his motion without providing any opportunity for a favorable outcome." *Id.* at 821. Thus, the appellate court in *Smart* found that this was not a situation in which a defendant "could preserve an opportunity for success at the state level while embedding in the state record a basis for possible future habeas relief." *Id* at 821.

Likewise, I can perceive of no situation under which Lee "could preserve an opportunity for success at the state level while embedding in the state record a basis for possible future habeas relief." *Id*. Here, Lee informed the court of all the information he had regarding his witnesses' surprising disappearance. Given the three witnesses' sudden, unexplained absence from the courthouse during the middle of a trial day, it is impossible to imagine that counsel could have done more to meet the requirements of Missouri Supreme Court Rules 24.09 and 24.10.

Furthermore, it is difficult to understand what part of Rule 24.10 was not satisfied, either by counsel's representations at the time he moved for a continuance or

by the circumstances otherwise known to the court; therefore, the trial court was notified of the grounds for the motion for a continuance and was given a clear opportunity to address its merits. *Cf. Smart*, 787 F.2d at 820 (the petitioner's pleadings, "while not in compliance with state procedure, notified the court as to his constitutional claim and gave the state court a clear opportunity to address his claim or allow him to replead," and thus non-compliance with the state procedure was not an "adequate and independent state ground" to bar *habeas* claims). The materiality of the testimony of alibi witnesses in Lee's case was obvious, when counsel had detailed in his opening statements that the alibi witnesses would testify that Lee was in California, not Kansas City, at the time of the murders, and the diligence of the applicant in attempting to obtain the presence of the witnesses was equally apparent, because the witnesses had previously been present and were under subpoena. *See* MO. SUP. CT. R. 24.10(a). Counsel's representation that he believed the witnesses were still in town, because they intended to attend a religious service, in my opinion, established reasonable grounds for belief that the attendance of the witnesses could be procured within a reasonable time. *See* MO. SUP. CT. R. 24.10(b). Counsel's indication in his opening statement of the critical content of the alibi witnesses' testimony adequately indicated what facts the witnesses would prove, and it should have been obvious that no other testimony could adequately establish Lee's alibi defense. *See* MO. SUP. CT. R. 24.10(c). Counsel's representations that the witnesses had been present at the courthouse before the lunch recess and that he had no idea why they had not returned was sufficient, in my view, under the circumstances, to satisfy the requirements of the rule that the witnesses not be absent by connivance, consent, or procurement of the applicant, and that Lee was seeking a continuance in good faith and not simply for purposes of delay. *See* MO. SUP. CT. R. 24.10(d).

However, after quoting the provisions of the rule, the Missouri Court of Appeals stated only, "After a careful review of the record, we find appellant's motion was made without the factual showing required by Rule 24.10," and that denial of a motion based on a deficient application was not an abuse of discretion." *State v. Lee*, No. WD

49456, slip op. at 5 (Memorandum Supplementing Order Affirming Judgment Pursuant To Rule 84.16(b) and 30.25(b)). Thus, the court that relied on Rule 24.10 failed to specify in what respect Lee's motion for a continuance owing to the sudden absence of alibi witnesses was deficient. Furthermore, as I believe any seasoned trial lawyer would agree, requiring that a motion for a continuance be in writing, with supporting affidavits, as required by Rule 24.09, when the motion is made in the midst of trial upon the discovery that subpoenaed witnesses are suddenly absent, would be so bizarre as to inject an Alice-in-Wonderland quality into the proceedings.

It must be remembered that these three witnesses had voluntarily traveled from California to Missouri for Lee's trial and had been present, and apparently ready and willing to testify on Lee's behalf, that very morning. Moreover, Lee's witnesses' affidavits raise a serious factual issue, which no court has addressed, as to whether state action was responsible for the disappearance of the witnesses from the courthouse in the middle of the day on which their testimony was required. The trial court, however, did not even attempt to enforce the subpoenas for these witnesses or otherwise attempt to ascertain why they were suddenly absent. *Cf. Gasaway*, 720 S.W.2d at 5 (the oral motion for continuance was not denied until the day after the absence of the witness under subpoena was discovered, the trial court had issued a writ of body attachment, and the sheriff had made a "diligent" but unsuccessful effort to locate the witness).

In short, this is not a case in which Lee was "sandbagging" the state trial court in a strategic maneuver to forgo adjudication of issues in state court while embedding in the record a ground for future federal habeas corpus relief. *See Smart*, 787 F.2d at 821 (considering whether the petitioner's non-compliance with state rules is simply an attempt to embed in the state record a basis for possible future habeas relief). Rather, Lee effectively placed the state court on notice as to the grounds for his motion for a continuance such that the state court had the opportunity to address the merits of his request. *Id.* at 820 (mere non-compliance with state rules should not preclude federal

review, where the petitioner's defective motion nevertheless gave the state court a clear opportunity to address his contentions). I conclude that, under these unique circumstances, Lee's failure to comply fully with Missouri Supreme Court Rules 24.09 and 24.10 is insufficient to preclude federal consideration of Lee's habeas claim. *See id.* at 820-21. Rather, strict compliance with these rules would "thwar[t] the assertion of federal rights" in the circumstances of this case. *Sloan*, 54 F.3d at 1379.

To put it another way, applying these rules in the circumstances of Lee's case is not "fundamentally fair." *Engle*, 456 U.S. at 126; *accord Strickland v. Washington*, 466 U.S. 668, 697 (1984) (observing that "fundamental fairness is the central concern of the writ of habeas corpus"); *Sykes*, 433 U.S. at 96-97 (Stevens, J., concurring) (measuring the appropriateness of *habeas corpus* relief against a "fundamental fairness" standard). It is instead rampant elevation of procedure over substance. *Cf. Coleman*, 501 U.S. at 759 (Blackmun, J., dissenting) (decrying the elevation of procedural impediments to vindication of federal rights in *habeas corpus* actions). We must not lose sight of the underlying principle behind the bar raised by an "adequate and independent state law ground," which is "'that failure to follow state procedures will warrant withdrawal of a federal remedy only if those procedures provided the habeas petitioner with a fair opportunity to seek relief in state court.'" *White*, 206 F.3d at 780 (quoting *Easter*, 37 F.3d at 1347). The procedural rules raised as a bar here provided Lee with no such fair opportunity, in the circumstances of his case, to obtain a continuance and mount his alibi defense.

This case, in no small measure, reflects the current status of federal *habeas corpus* jurisprudence. Judicial interpretation of the Great Writ during the past three decades has spun a cascading web of confounding and labyrinthine procedural obstacles, *see Coleman*, 501 U.S. at 759 (Blackmun, J., dissenting); *Murray v. Carrier*, 477 U.S. 478, 497 (1986) (Stevens, J., concurring in the judgment) ("The heart of this case is a prisoner's claim that he was denied access to material that might have established his innocence. The significance of such a claim can easily be lost in

a procedural maze of enormous complexity."), notwithstanding that the Supreme Court once recognized that "habeas corpus is not 'a static, narrow, formalistic remedy . . ., but one which must retain the 'ability to cut through barriers of form and procedural mazes.'" *Hensley v. Municipal Court, San Jose Milpitas Jud. Dist., Santa Clara County, Cal.*, 411 U.S. 345, 349-350 (1973) (quoting *Jones v. Cunningham*, 371 U.S. 236, 243 (1963), and *Harris v. Nelson*, 394 U.S. 286, 291(1969)). This large and increasingly complex web has now virtually obscured the core purpose of the Writ.

Not only has this procedural web taken on a life of its own, it has developed its own unique nomenclature, a procedural cant further obscuring the merits of most *habeas corpus* actions: Rather than addressing the underlying merits of the constitutional claims asserted by a petitioner for *habeas corpus* relief, opinions in *habeas* actions are now riddled (in both the primary and secondary sense of the word) with terms like "procedural default," "cause and prejudice," "abuse of the writ," "successive petitions," "mixed petitions," "adequate and independent state law grounds," "the 'look through' presumption," "the total exhaustion rule," "state waiver of the exhaustion defense," "non-retroactivity," "non-cognizable constitutional claims," "fairly presented claims," "unintended claims," "objective factors external to the defense," and "the presumption of correctness." The vast majority of federal *habeas* petitioners find themselves entangled in this omnipresent and perplexing procedural web, which effectively precludes federal courts from ever reaching the merits of their constitutional claims. For example, when the Third Circuit Court of Appeals recognized that a case before it "illustrate[d] the complexity engendered by the current federal habeas corpus doctrine of procedural default," *Hull v. Feeman*, 991 F.2d 86, 88 (3d Cir. 1993), the court also expressed its concern that its method for breaking free of the procedural web, so that it could reach the merits of the petitioner's claim, might instead "have placed [the petitioner] into an enclosed loop from which he cannot escape." *Id.* at 94 n.6.

With the inevitable focus on this bewildering array of convoluted procedural obstacles, it is all too easy to look past some crucial, simple truths. First, the mystifying procedural web most often traps and snares all but the most sophisticated or just plain lucky petitioners, and Lee is neither. Second, there is a reasonable possibility that Lee is in fact innocent. The case against him, based primarily on shaky eye-witness testimony with no corroborating physical evidence, was not strong. Third, his state court conviction was virtually assured by the trial judge's denial of his oral motion for a short continuance, because he was thereby precluded from presenting his alibi defense. The prejudicial effect of the denial of his motion for a continuance is especially apparent in light of defense counsel's promise, in his opening statement, to present an alibi defense and witnesses. Fourth, the trial court's summary denial of a continuance—on grounds that appear to me to be unreasonable and completely arbitrary, and hence fundamentally unfair, in the circumstances presented and in the face of a justifiable request for a brief delay—most probably amounts to an unconstitutional denial of due process. *See, e.g., McMiller v. Lockhart*, 915 F.2d 368, 372 (8th Cir. 1990) (a *habeas* petitioner's due process claim founded on denial of a motion for continuance of his criminal trial was judged against "fundamental fairness" and "abuse of discretion" standards, in light of the circumstances of the case), *cert. denied*, 498 U.S. 1108 (1991); *White v. Lockhart*, 857 F.2d 1218, 1220 (8th Cir. 1988) (where the *habeas* petitioner asserted a due process violation in the trial court's refusal to continue his criminal trial, the court noted that "'[o]nly an unreasoning and arbitrary "insistence upon expeditiousness in the face of justifiable request for delay"' rises to the level of a constitutional violation," quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983), and stating that, to prevail, the petitioner "must show that in denying his request for a continuance the district court acted in a manner 'so egregious that it was fundamentally unfair,'" quoting *Wade v. Armontrout*, 798 F.2d 304, 307 (8th Cir. 1986)); *Loggins v. Frey*, 786 F.2d 364, 366-67 (8th Cir.) (where a *habeas* petitioner asserts a violation of due process based on denial of a continuance, "'[o]nly an unreasoning and arbitrary "insistence upon expeditiousness in the face of a justifiable request for delay"'. . . . may give rise to a violation of due process") (quoting *Morris*,

461 U.S. at 11-12, in turn quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)), *cert. denied*, 479 U.S. 842 (1986). Lastly, it is hard to conceive of a more arbitrary action of a trial judge that could inflict greater prejudice to a defendant in a criminal case than the actions of the trial judge in Lee's case.

In sum, I would reverse the decision of the district court. I would hold that there is no procedural default, because there is no "adequate and independent state law ground" barring federal *habeas* review. Consequently, I would remand this *habeas* action for an evidentiary hearing on Lee's claim that he was denied due process when the state trial court refused to grant him a continuance in order to permit him to secure the testimony of his three subpoenaed alibi witnesses. The district court should have the first opportunity to decide the merits of Lee's federal constitutional claim.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.